SINGLETON v. SINGLETON.

1. MARRIED WOMAN.—FINDING OF FACT that mortgage was executed by married woman for benefit of her separate estate, affirmed.

2. DEEDS—WARRANTY.—Where father conveys to sons his one-third interest in land, and they reconvey to him this one-third interest and their two-thirds interest for life by deed with general warranty, the warranty of the father is only as to his one-third interest.

3 FRAUD—HUSBAND AND WIFE.—Renunciation of dower by wife on conveyance of husband to sons, accompanied by no act or word of hers relating to a previous mortgage held by husband on lands, and assigned to her by him as a gift, he saying it was paid, but saying nothing as to the assignment, is no fraud on part of wife.

4. ESTOPPEL—FORECLOSURE.—Where wife is not present at conversations between father and sons as to mortgage, she is not estopped by his misrepresentations from foreclosing the mortgage assigned to her by him.

5. FRAUD.—Representation by father to sons that mortgage on land of deceased wife had been paid by him, in order to induce conveyance to him by sons for life, concealing at time previous assignment by him of such mortgage as gift to his second wife, is a fraud on the sons.

6. MORTGAGE—MERGER—HUSBAND AND WIFE—ASSIGNOR AND ASSIGNEE.—Where a mortgage is executed by married woman on her separate estate, and she dies leaving a husband and sons, and the husband pays the mortgage and assigns it to his second wife as a gift, she takes it subject to the defenses against the husband, and one-third of mortgage debt is paid by descent of land upon him, and so much of mortgage fund as he used to pay his debts, and excess of personal property over his share received by him, should be credited on remaining two-thirds of mortgage debt, and assignor's future acts, and failure of assignee to record assignment, do not affect it.

Before KLUGH, J., Kershaw, September, 1900. Modified.

Action for injunction and to remove cloud on title by Howard C. and John A. Singleton against Esther Singleton, administratrix of Robert Singleton. The master filed the following report:

"This is a suit brought by the plaintiffs, H. S. Singleton

and J. A. Singleton, to have a mortgage, which is a cloud
upon the title to a certain piece of real estate owned by them,
declared null and void, and cancelled, the defendant asking
that said mortgage be foreclosed.    One A. E. Singleton, the
mother of the plaintiffs, was at the time of her death on June
8th, 1893, the owner in fee simple of the real estate in ques-
tion, a lot and store house in Camden, S. C.    Said A. E.
Singleton died intestate, leaving surviving her as her heirs at
law and distributees her husband, Robt. Singleton, and her
two sons, H. C. Singleton and J. A. Singleton, the plaintiffs
herein.   On September 1, 1891, said A. E. Singleton executed
and·delivered to one Woodward Holland her bond in the
penal sum of $1,610, conditioned for the payment of the sum
of $805, due and payable as follows : $420 September 1, 1892,
with interest after maturity at the rate of eight per cent. per
annum, and $385, with interest at the same rate on Septem-
ber 1, 1893.    And in order to secure the payment of said
bond, executed a mortgage to said W. Holland on the real
estate in question.    On October 21, 1893, said mortgage
was assigned by said W. Holland to R. Singleton upon the
payment by said R. Singleton of $843.20.    And on Decem-
ber 15, 1893, R. Singleton assigned said mortgage to said
Esther Singleton, his second wife, the defendant herein.
No consideration passed for said assignment, it being a deed
of gift.    It appears that after the second marriage of R. Sin-
gleton, he and his sons, the plaintiffs, became involved in a
disagreeable dispute over the settlement of the estate of A.
E. Singleton, deceased, of which dispute Esther Singleton
was cognizant.    R. Singleton and his sons finally settled
their difference by the said R. Singleton making to H. C.
and J. A. Singleton a deed of his interest in said real estate,
to take effect upon his death, plaintiffs in consideration of
same making a deed to him for his life of their two-thirds
interest in said real estate, said deeds bearing date January 5,
1894.    The deed of R. Singleton to plaintiffs contained the
usual general guaranty clause, and Esther Singleton re-
nounced her dower to same. It is an undisputed fact from the

evidence that at the time of the execution of said deeds the plaintiffs did not know of the assignment of bond and mortgage to Esther Singleton; and in fact the testimony is that before H. C. Singleton signed deed, R. Singleton was asked if the W. Holland mortgage was paid, and R. Singleton replied that it was paid. There is no testimony as to whether or not R. Singleton was asked about assignment of mortgage to him by W. Holland. The mortgage was duly recorded on September 5th, 1891, but the two assignments were not recorded until May 30, 1898, after the commencement of this action. There does not appear, however, to have been any secrecy about the assignment of mortgage by Holland to R. Singleton. The witness, E. C. Zemp, cashier of the Farmers and Mechanics Bank, testified that R. Singleton spoke to him about assignment the day before said assignment was executed, and the money was paid to Holland by a check on bank. Both W. Holland and R. Singleton died before the commencement of this suit.

"The plaintiffs contend that this mortgage is null and void and should be cancelled for various reasons. The plaintiffs first attack the mortgage under the 'married woman's' law. They claim that said mortgage was given to secure a loan made for the purpose of obtaining money to pay the debts of R. Singleton. There is no question as to the fact that when A. E. Singleton executed bond and mortgage, she was married to R. Singleton. Although this mortgage was executed in 1891, it cannot be considered under the act of 1887, as the mortgage did not declare that it was the intention of mortgagor to bind her separate estate, and, therefore, this mortgage will have to be considered under the act of 1882. This case is peculiar, in that the mortgagor, A. E. Singleton, her husband, R. Singleton, and the mortgagee, W. Holland, the parties to the transaction, are all dead, and, therefore, it is impossible to get direct testimony on the material questions in issue. The mortgagor not having declared her intention of binding her separate estate, and the burden of such proof being in the first instance

upon the holder of the mortgage to show that the money was borrowed from Holland by A. E. Singleton, or through her husband as her agent, and the defendant having failed to make such proof, the mere fact of mortgagor having executed mortgage and the loan having been made, will not of itself be sufficient to make said money a part of the separate estate of A. E. Singleton, and the claim for same enforced against her regardless of the disposition of the money, and this case is for that reason to be distinguished from the case of *Hibernia Savings Institution* v. *Luhn,* 34 S. C., 175, and the case of *Scottish Company* v. *Deas,* 35 S. C., 43. We, therefore, have to fall back upon the doctrine laid down in *Habenicht* v. *Rawls,* 24 S. C., 461, and reaffirmed in numerous other cases not necessary to be reviewed here, that it is not so much the intention of the married woman to bind her separate estate as it is her power to do so, whether or not the contract was for the benefit of her separate estate; if not, it could not be binding upon her separate estate. It has been decided in the case of *Pelzer* v. *Durham,* 37 S. C., 354, that the party seeking to recover upon a married woman's contract must show by evidence, direct or circumstantial, that the contract was made with reference to her separate estate. Now, has the defendant shown that the bond and mortgage executed by A. E. Singleton to Holland was for the benefit of her separate estate? It has not been clearly so shown by direct evidence, but as direct evidence is impossible in this case, circumstantial evidence has to be relied on. The evidence shows that the mortgage was executed September 1, 1891. That prior to that time R. Singleton had been conducting a bakery and grocery business in Camden, in the store on the mortgaged premises. That on October 23d, 1891, A. E. Singleton started business with Geo. W. Steffens' Sons of Charleston, and continued to do business with them until March 1, 1894. That on September 25, 1891, John C. Weiters, of Charleston, a wholesale grocer, sold A. E. Singleton a bill of goods amounting to $308.29, of which $275 was paid on the same day and the balance still

remaining unpaid. The testimony of the cashier of the Bank of Camden, and the books of the bank, show that in the fall and winter of 1891 and the winter and spring of 1892 numerous collections came to bank from business houses against A. E. Singleton. The city recorder and county auditor testify as to the tax returns of the Singletons, which shows that all property, real and personal, including merchandise, was returned in the name of A. E. Singleton for the years 1890, 1891 and 1892, and that the name of R. Singleton did not appear upon the tax books as a taxpayer for those years. So it seems very plain that the business was conducted by A. E. Singleton from about September, 1890. And under the circumstances I think the circumstantial evidence sufficient to prove the fact that the mortgage was executed and the money used, the greater part for the benefit of the separate estate of A. E. Singleton. It has been decided in the case of *Brown Bros.* v. *Prevost,* 28 S. C., 123, and other cases, that when a mortgage is given by a married woman, and it is proved that part of the money borrowed was for the benefit of her separate estate and part to pay the debts of her husband, that her separate estate can only be held liable for the amount used for the benefit of her separate estate. Was any of the money borrowed from Holland used to pay the debts of R. Singleton? J. A. Singleton testifies that the money was borrowed to pay the debts of R. Singleton, but did not specify a single debt that was paid or a single debt that R. Singleton owed. Defendant objects to this testimony, under sec. 400 of the Code. But I hold that as the witness testified to a conversation not between *himself* and a deceased party, but between a party deceased and another party (A. E. Singleton and R. Singleton), that although witness is an interested party, he is competent to testify to such conversation. The 6th paragraph of the synopsis of the case of *Moore* v. *Trimmier,* 32 S. C., 512, is as follows: 'A party to the action and having an interest in the subject thereof, derived from his deceased father, may testify to a conversation between such father and another

person now deceased, as a witness against the representatives of such deceased person who is a party to the action.' A case on all-fours with this one. The testimony *de bene esse,* taken in Charleston, and the testimony of C. H. Yates, shows that R. Singleton owed on September 1, 1891, a balance to Geo. W. Steffins of $60.20, of which he paid on October 12th, 1891, $25, the balance still being due. That R. Singleton paid through Bank of Camden, on September 14, 1891, to Brux & Tully, $9.80; on September 4, 1891, $31.20 to Union Mills; on September 21, 1891, $17.70 to Key & Co., amounting to $83.70—being the only debts shown by the testimony to have been paid by R. Singleton after execution of mortgage of A. E. Singleton to Holland. While there is no direct evidence that R. Singleton paid these debts out of the money borrowed from Holland, still taking this fact in connection with the testimony of J. A. Singleton and all the circumstances of the case, I think the proof sufficient to show that such debts were so paid. This amount would, therefore, have to be deducted from the original amount of the mortgage. And if this was the only contention in the case, the estate of A. E. Singleton would be liable for the sum of $1,128.60, with interest at eight per cent. per annum on $756, from January 1st, 1899. The judgment roll in the case of J. C. Claussen & Co. *v*. R. & A. E. Singleton, offered in evidence, does not seem to have any bearing on the point just discussed. The judgment was for $116.55, dated 13th February, 1890, and satisfied 1 May, 1890, before the Holland loan was made.

"There are several other contentions of plaintiffs now to be considered. Plaintiffs contend that the assignment of mortgage by R. Singleton to A. E. Singleton was fraudulent, and must be set aside for that reason. There seems to be no necessity in this case to ascertain whether or not such assignment was fraudulent; for even if it was, taken by itself it could only operate at the most in setting aside the assignment of the mortgage to Esther Singleton and not the mortgage itself. Plaintiffs also contend that the bond and mort-

gage being a chose in action, that Esther Singleton cannot claim the equities of an innocent purchaser for value without notice, and that she took the mortgage subject to any setoff or defense that they had against R. Singleton or Holland. Sec. 133 of the Code is as follows: 'In the case of assignment of a thing in action, the action of the assignee shall be without prejudice to any set off or other defense existing at the time of or before notice of the assignment; but this section shall not apply to a negotiable promissory note or bill of exchange, transferred in good faith, and upon good consideration, before due.' In the case of *Patterson* v. *Rabb,* 38 S. C., 138, the doctrine of our Courts is reaffirmed, that bonds and mortgages are choses in action, and the assignees thereof are not protected by the equity of purchaser for value without notice. The Court in this case, page 152, says: 'The Circuit Judge is quite right in his decree when he says, "an innocent assignee has all his (mortgagee's) rights." ' That is exactly the doctrine of our Courts. But he ought to have gone further, and said that, under our law, an innocent assignee of a chose in action under seal takes such chose in action subject to all the infirmities in and against his assignor. In the case of *Moffatt* v. *Hardin,* 22 S. C., 30, the Court says in regard to sec. 133: 'Nothing could be plainer or more positive than this provision. As we understand it, the debtor, in executing such securities, gives no authority expressly or impliedly, in fact or in law, that they may be sold at all; and if they are sold, the purchaser is notified by law that he takes them at his peril under the principle *caveat emptor.*' In all the cases that have been decided constructing sec. 133, there seems to have been but one assignment of the mortgage, and the law is very plain that the assignee can rise no higher than the mortgagee. But in this case there have been several assignments of the mortgage. There appears to be no set off or other defense in this case by plaintiffs against Holland, other than the 'married woman's' defense. Under the wording of sec. 133 and the decision in the cases above referred to, I think that the contention of

plaintiffs is correct, and that A. E. Singleton stands in the shoes of R. Singleton, and that the mortgage is subject to any defense that plaintiffs have against R. Singleton. Furthermore, Esther Singleton could not protect herself as an innocent purchaser for value, as she acknowledges that she did not pay R. Singleton anything for bond and mortgage; nor is she without notice of the defense against R. Singleton, as will be shown later. The deed of R. Singleton to plaintiffs of the land that the mortgage in question is on, contained the usual general warranty clause (Esther Singleton renounced her dower, and, therefore, is bound to have had notice of the deed and the warranty clause). Plaintiffs contend that such warranty was a contract to pay off any encumbrance upon land, mortgage or otherwise. In the case of *Evans* v. *McLucas,* 12 S. C., 56, it is held that a covenant of warranty in a deed is itself a contract to pay any encumbrance on the land. And the Court says: 'It is settled in this State, beyond dispute, that the general covenant of warranty, since the act of 1795, must be construed as containing the various covenants in use prior to that time in conveyances of land.' The question that arose in the case of Evans *v.* McLucas, as to whether the grantee could avail himself of the covenant of warranty against the grantor until the grantee actually suffered damage by the enforcement of the encumbrance against the grantee, cannot arise in this case, as the defendant is in this action asking for the enforcement of the encumbrance, the foreclosure of the mortgage. And I, therefore, hold that said mortgage is null and void and should be cancelled. It may be true that the plaintiffs got the best of the bargain in the deal with their father, but as a valuable consideration passed for deed of R. Singleton to plaintiffs, we cannot inquire into the sufficiency of the consideration in this case.

"The question of merger raised by plaintiffs was not pushed much by them, and it is hardly necessary to consider it now. At the most, merger could only operate to dis-

charge the mortgage against R. Singleton's one-third inter-est in land.

"To particularize, I find as matters of fact:

"I. That the plaintiffs, H. C. Singleton and J. A. Single-ton, are the owners in fee of the real estate described in the complaint.

"II. That on the first day of September, 1891, one A. E. Singleton, the mother of the plaintiffs, and the wife of one Robert Singleton, deceased, was the owner in fee simple of the premises described in the complaint, and that she, the said A. E. Singleton, on said first day of September, 1891, made and delivered to one Woodward Holland her bond in writing and under seal, conditioned for the payment to the said W. Holland of the sum of $805, in one and two years from the date of said bond, the sum of $420 on the first day of September, 1892, with interest after maturity at the rate of eight per cent. per annum, and the sum of $385 on the first day of September, 1893, with interest after maturity at the rate of eight per cent. per annum, which said bond she secured by making and delivering to said W. Holland a mortgage of the same date and upon the premises described in the complaint, which said mortgage was duly recorded in the office of the register mesne conveyance for Kershaw County, in book Q. Q, page 470, on September 5th, 1891.

"III. That on the 8th day of June, 1893, the said A. E. Singleton died intestate, leaving surviving her as her heirs at law her two children, the plaintiffs herein, and her hus-band, R. Singleton.

"IV. That on the 6th of January, 1894, the said R. Singleton made and delivered to plaintiffs a deed to his in-terest in the mortgaged premises herein, to take effect after his death. And that the plaintiffs at the same time made and delivered to R. Singleton, for his lifetime, their interest in said mortgaged premises.

"V. That the said deed of R. Singleton to plaintiffs con-tained the usual general warranty clause, and that Esther Singleton renounced her dower on said deed.

"VI. That on October 21st, 1893, the said mortgage of A. E. Singleton to Woodward Holland was assigned to Robt. Singleton by Woodward Holland, upon the payment to him by R. Singleton of $843.20.

"VII. That on the      day of      , 1895, said Robert singleton intermarried with one Esther Burkett, and that on the      day of      ,1898, the said Robert Singleton died intestate, and his wife, Esther Singleton, was duly appointed his administratrix.

"VIII. That on the 15th day of December, 1893, the said bond and mortgage were transferred by R. Singleton to Esther Singleton in writing, and that said transfer and assignment was a deed of gift.

"IX. That on March 3, 1896, said Esther Singleton borrowed money from Farmers and Merchants Bank, and transferred and assigned to said bank said mortgage as collateral security.    That upon the payment of said loan to said bank by Esther Singleton, bank transferred back to her said mortgage on November 5, 1896, and that said Esther Singleton then left mortgage with bank for safekeeping. That said two assignments were not recorded in clerk's office.

"X. That after the marriage of R. Singleton and Esther Singleton, and up to the time of the exchange of deeds between R. Singleton and plaintiffs, there was some unpleasantness between R. Singleton and plaintiffs over the settlement of the estate of A. E. Singleton, and that Esther Singleton knew of said unpleasantness.

"XI. That the assignments of bond and mortgage by Holland to R. Singleton and the assignment by R. Singleton to Esther Singleton were not recorded in clerk's office until May 30th, 1898, after the commencement of this suit.

"XII. That Esther Singleton had actual notice of the deed of R. Singleton to plaintiffs.

"XIII. That at the time, and just before the execution of deed by plaintiffs to R. Singleton, said R. Singleton told one B. B. Clarke, in the presence of H. C. Singleton, that the

15—60

Woodward Holland mortgage was paid, but nothing was said as to the assignments, and that when plaintiff executed deed they knew nothing of said assignments.

"XIV. That Esther Singleton told J. A. Singleton, shortly after the death of R. Singleton, that she knew nothing of the Holland mortgage and never had her hands on it.

"XV. That when A. E. Singleton executed bond and mortgage to Woodward Holland, she was a married woman, the wife of R. Singleton.

"XVI. That most of the money borrowed by A. E. Singleton from Woodward Holland, to secure which mortgage was given, was used for the benefit of the separate estate of said A. E. Singleton.

"XVII. That $83.70 of said loan was used by R. Singleton to pay his individual debts.

"XVIII. That deducting this $83.70 from principal of mortgage, the amount of said bond and mortgage, with interest, would be $1,128.60, with interest on $756 from January 1st, 1899.

"XIX. That for the years 1890, 1891 and 1892, R. Singleton's name did not appear upon the tax books as a taxpayer, and all the property, real and personal, including merchandise, was returned in the name of A. E. Singleton.

"XX. That from the fall of 1891, A. E. Singleton conducted the bakery and grocery business in Camden, S. C., and that prior to the time the said business was conducted by R. Singleton.

"I conclude as matters of law:

"I. That the burden of proof is upon the defendant, in the first instance, to prove that the bond and mortgage executed by A. E. Singleton to Woodward Holland was executed for the benefit of the separate estate of A. E. Singleton.

"II. That the separate estate of A. E. Singleton, leaving out the other contentions in the case, is liable for the amount

of said loan from Holland, which was used for the benefit of. her separate estate.

"III. That the plea of merger will not operate in this case to the extent of cancelling said bond and mortgage.

"IV. That the plea of plaintiffs that the assignment of bond and mortgage by R. Singleton to Esther Singleton was fraudulent, will not, of itself, be sufficient to set aside said bond and mortgage as null and void.

"V. That Esther Singleton took bond and mortgage subject to all setoffs or defenses that plaintiffs might have against R. Singleton or Woodward Holland, before or at the time of notice of said assignment.

"VI. That the warranty clause in the deed of R. Singleton to plaintiffs was a warranty against any incumbrance on said real estate.

"VII. That the said mortgage, which the defendant is now seeking to foreclose, is an incumbrance on said real estate and cannot be enforced against plaintiffs, the grantees of R. Singleton, and should be cancelled."

From judgment of the Circuit Court adjudging the mortgage null and void and ordering its cancellation of record, the defendant appeals.

*Mr. W. M. Shannon,* for appellant, cites: *Statements by assignor after assignment cannot effect assignee:* 15 S. C., 171. *This must be looked at as a contest between the original parties:* Code, 133; 22 S. C., 29.

*Messrs. B. B. Clarke, M. L. Smith* and *J. T. Hay,* contra, cite: *First exception is too indefinite:* 53 S. C., 155; 52 S. C., 74, 405; 51 S. C., 58. *Assignee takes chose subject to all defenses against assignor:* 5 Stat., 530; 14 Stat., 450; Code, 133; 22 S. C., 30; 57 S. C., 467; 57 S. C., 147; 2 Speer, 163; 4 Rich. Eq., 116; 11 Rich., 432; 22 S. C., 9; 38 S. C., 148; 43 S. C., 287; 45 S. C., 83; 49 S. C., 496; 51 S. C., 467. *Assignee of non-negotiable chose in action cannot claim equity of innocent purchaser for value without*

*notice:* 22 S. C., 9; 4 Rich. Eq., 116; 57 S. C., 467. *Exception founded on misconception of holding below should be disregarded:* 50 S. C., 218; 49 S. C., 7, 438; 55 S. C., 374. *Duty of assignee to notify obligor of assignment:* 1 Ency., 843, notes. *Burden is on appellant to show that married woman had the power to make this contract:* 24 S. C., 461; 34 S. C., 175; 35 S. C., 43; 30 S. C., 238; 31 S. C., 436; 32 S. C., 455; 38 S. C., 519; 52 S. C., 497. *This Court may reverse finding of fact below in equity case:* 45 S. C., 503; 47 S. C., 347; 51 S. C., 362; 55 S. C., 198; 56 S. C., 154; 57 S. C., 405. *As to construction of deeds:* 23 S. C., 235; 24 S. C., 235; 35 S. C., 314; 42 S. C., 312; 15 S. C., 33; 48 S. C., 281; 21 S. C., 70; 17 S. C., 670. *As to effect of general warranty:* 12 S. C., 56; 9 Rich., 374; 27 S. C., 193; 24 S. C., 451.

April 8, 1901.    The opinion of the Court was delivered by

MR. JUSTICE POPE.    This is an action by which the plaintiffs seek to have a mortgage adjudged null and void, as a cloud upon their title to land, and in which the defendant, as an individual, resists plaintiffs' claim and seeks to have a mortgage foreclosed as upon the said land of plaintiffs. All the issues of law and fact were referred to L. A. Wittkowsky, Esq., as master for Kershaw County. The master took all the testimony, and his report on all the issues was admirably done. This report of the master should be reported in full. When the report and exceptions came on to be heard by his Honor, Judge Klugh, although he modified some of the conclusions of law embodied in the master's report, he reached the same opinion on the plaintiffs' equities as did the master, and accordingly adjudged that the mortgage be cancelled by the clerk of the Court as null and void. From this decree the defendant has appealed, and the plaintiffs, in accordance with the established practice, have served notice of the grounds they will urge before this Court, in case defendant's exceptions should prevail, why the errors

of the Circuit Judge, if corrected by this Court, will lead to the affirmance of the decree.

For reasons which we will subsequently give, we prefer to pass at this time upon these grounds submitted by the plaintiffs :

"I. That the mortgage in question was made by a married woman, and the defendant in this action, upon whom the burden of proof rested, failed to produce any testimony to show that said mortgage was a contract which the married woman was competent to make ; and that the finding of the master upon this point, concurred in by the Circuit Judge, is entirely without any evidence to sustain it." It is quite true that Mrs. A. E. Singleton was a married woman when she made the mortgage in question, and that it was the duty of the defendant to show by proof that such debt when created was to be paid by the mortgagee out of her separate estate, or, in other words, that the debt was created for her separate estate (*Habenicht* v. *Rawls,* 24 S. C., 461). The testimony shows, that prior to 1891, to wit : in 1889 and 1890, the returns of property, both real and personal, for taxation represented all the property as that of Robert Singleton, the husband of Mrs. A. E. Singleton, and the latter had no property returned for taxation ; but that afterwards, in 1891 and 1892, all the property, real and personal, was listed in the name of Mrs. A. E. Singleton for taxation, during which time the husband made no return of property for taxation. Not only so, but that the return for taxation by Robert, the husband, and A. E., his wife, each for himself and herself, showed that there was a stock of merchandise, though not of a large amount. And also the testimony of the Charleston merchant or merchants showed that Robert, while he held the property, ran an account for merchandise, and also that the wife, Mrs. A. E. Singleton, did business with them in the purchase of goods; that at one purchase on 21st September, 1891, Mrs. Singleton paid as much as $275 in cash. The bond and mortgage were executed in September, 1891. Both these parties, Robert

Singleton and his first wife, Mrs. A. E. Singleton, are dead, and so also is the mortgagee, Holland. There was no testimony that Mrs. A. E. Singleton had a dollar in money when she executed the bond and mortgage. Such being the case, it is very natural that Mrs. A. E. Singleton should have borrowed this money for her separate estate. We will not disturb this concurrent finding of the Circuit Judge and master.

"II. That his Honor, the Circuit Judge, should have held that the covenant of warranty in the deed of Robert Singleton to H. C. and John A. Singleton covered the whole premises embraced in said deed, and not only one-third thereof, said covenant of warranty being entire and unconditional, and there being no evidence to the contrary, if the same had been competent; and that his Honor erred in attempting to apply rules of equity to the construction of a written instrument which should have been given its full legal effect." To understand this ground of appeal, we will state the facts which gave rise to the question. Robert Singleton's first wife, Mrs. A. E. Singleton, departed this life intestate in June, 1893, leaving her husband and the plaintiffs, her only children, her heirs at law. He soon afterwards married the defendant, Mrs. Esther Singleton. It may be readily supposed that this circumstance angered the two sons, Howard C. Singleton and John A. Singleton, who were the only children of the marriage of Robert and A. E. Singleton. At any rate, we find that they quarreled as to the division of her landed property. Peace was, however, restored on 4th January, 1894, by an agreement of the father to accept a deed of two-thirds of the house and lot now in controversy by Howard C. and John A. Singleton to him for life; he already owned one-third thereof, and then he in turn agreed to convey by deed to Howard and John Singleton the whole property (house and lot), to take effect at his death. Both deeds were executed on that day. A general warranty was given in each deed, although he, Robert Singleton, did not specify in his

warranty that it was intended to include a warranty against any and all incumbrances; yet in this State—certainly since the case of *Jeter* v. *Glenn,* 9 Rich., 374—a general warranty includes a warranty against incumbrances. The Circuit Judge restricted the general warranty as including a warranty against incumbrances on the property covered by the deed to apply only as to the third part owned by the husband. It seems to us that the conclusion of the Circuit Judge in this particular is correct, under the circumstances of this cause; for he, Robert Singleton, had received a title from his two sons with the same general warranty, and as the title he conveyed to them was after, in point of time, their conveyance to him, he only conveyed as to their two-thirds such title as he got from them. This exception is overruled.

"III. That his Honor should have held that the evidence showed that the defendant, Esther Singleton, was a party to an actual fraud perpetrated upon the plaintiffs by Robert Singleton, in misleading them by misrepresentations as to the mortgage of A. E. Singleton, and that she could not for that reason set up said mortgage against the plaintiffs." Fraud is a word of serious import in the law; but when the word "actual" is placed in conjunction with it, is far more serious. We fail to find in the "Case" by the testimony one single word uttered by this defendant at the time of the execution of the mutual deeds between Robert Singleton and the two plaintiffs on the 4th January, 1894, or before that time, which could have misled the plaintiffs. Not only was there absence of misrepresentation by her, but no act of hers except renouncing her dower on the deed of Robert Singleton to his two sons, the plaintiffs, was proved by the testimony to have been committed by her. This exception is overruled.

We now come to the consideration of defendant's grounds of appeal, which are as follows: "I. That his Honor erred in holding that Esther Singleton was in any way bound by the concealment and representations made by Robert Singleton in reference to the Holland mortgage, or

that she was estopped by these concealments and representations from setting up the said mortgage against the plaintiffs and from foreclosing said mortgage." We think the Circuit Judge went too far, in holding the defendant responsible for the concealment and representation made by Robert Singleton in regard to the Holland mortgage, as we trust we will be able to point out by a brief reference of the facts on this branch of the case. When Robert Singleton and his two sons, the plaintiffs, were discussing their business differences, the testimony fails to show that the defendant was present. It is true, the father told what was not true, when he assured them that the mortgage was paid. This was on the 4th day of January, 1894. At that date Robert Singleton did not disclose the fact that he had paid the mortgage debt in full and had taken an assignment of it to himself, and that in December, 1893, he had assigned said bond and mortgage to the defendant. She did not say the mortgage was paid. Never did the defendant utter one word at this settlement. She was not asked if she held by assignment such bond and mortgage. By the testimony, such a subject was never discussed in her hearing. How, then, could she by act, by word, or by silence, mislead any one? Such being the case, the Circuit Judge was in error, and this exception is sustained.

"2. That his Honor erred in holding that the assignment of the Holland mortgage to Esther Singleton was concealed by Robert Singleton from his sons, in order to induce them to execute the deed to him. 3. That his Honor erred in holding that Esther Singleton was present when the transaction took place between Robert Singleton and his sons, and that she knew what it was and that she was a party to the concealment or representations." The second exception is overruled. By the testimony, Robert Singleton intended to do what he did to perpetrate a bold fraud on his two sons. We sustain the third exception. There was no evidnce that she was present, that she knew

what they were doing, or that she was a party to the concealment.

"4. That his Honor erred in directing the clerk of court to enter a cancellation on the record of the mortgage of A. E. Singleton to Woodward Holland." In discussing this exception, we propose to give our views of how the equities here involved affect parties to this action.

It will be remembered that the master has found, and the Circuit Judge has concurred in that finding, that Robert Singleton used $83.70 of the money borrowed by his wife from Holland under the mortgage. Interest on this sum from 21st September, 1891, to 21st October, 1893, is $13.90, aggregating on 21st October, 1893, $97.60. The mortgage debt amounted on 25th October, 1893, to $843.20, one-third of $843.20 is $281.07. Add $97.60 to $281.07 amounts to $377.67. Deduct this $377.67 from the amount due 21st October, 1893, leaves a balance of $465.53. This amount of $465.53, with interest at eight per cent. per annum to 7th April, 1901 ($265.31), is $730.84, for which sum the defendant is entitled to have her mortgage foreclosed. It is admitted that Robert Singleton took the bond and mortgage on 21st October, 1893, which on that date amounted to $843.20; at that date he owned one-third of the real estate in controversy. Consequently, on that date, one-third of the bond and mortgage, amounting to $287.07, was paid by operation of law, leaving only $562.13 of the mortgage debt after deducting one-third thereof, as paid by operation of law. But in addition to this, it was found by the master and Circuit Judge that on 21st September, 1891, Robert Singleton had used $83.70 of the wife's money of the bond and mortgage. Therefore, on 21st October, 1893, this sum of $83.70, at eight per cent. interest, amounted to $97.60. By deducting this from $562.13, there will be left on 21st October, 1893, a balance of $465.53. This, with eight per cent. interest to 7th April, 1901, will amount to $730.84. Since the cases of *C., C. & A. R. R.* ads. *Agnew*, 24 S. C., 18, and *Agnew* v. *Renwick*, 27 S. C., 562, there can be no

doubt that in this State, the law is that merger takes place when one who is the owner of the land purchases an incumbrance upon that land, and that thereby the incumbrance is destroyed. In the case at bar, the title to this house and lot in Camden, on the death of Mrs. A. E. Singleton *intestate,* immediately vested in Robert Singleton, the husband, and the plaintiffs, Howard and John Singleton, as the only heirs at law of the said Mrs. A. E. Singleton, deceased, one-third in each. So that on 21st October, 1891, Robert Singleton's one-third interest in that land was bound by one-third of the mortgage executed by Mrs. A. E. Singleton to Holland. When Robert Singleton paid the whole mortgage debt, $843.20, to Holland out of his, Robert's, own money, Robert's one-third of said $843.20 was paid by operation of law, leaving only two-thirds of said $843.20 still due. But it is also true, that of the two-thirds of said mortgage debt, to wit: $562.13, Robert Singleton was not entitled to hold the same in its entirety; for on the 21st September, 1891, he had used $83.70 of the money borrowed by his wife, and the plaintiffs were entitled to have such sum of $83.70, and interest thereon from 21st September, 1891, to 21st October, 1893, at eight per cent. per annum (which was $13.90), both sums amounting to $97.60, credited upon said $562.13; which when due would only leave $464.53 still due on said mortgage. This, we must remember, was the condition *on the 21st October, 1893.* But on 15th December, 1893, Robert Singleton assigned for good, not valuable, consideration the said bond and mortgage to the defendant, Mrs. Esther Singleton. This he had the right to do. And we have held that bond and mortgage must be reduced, as we have before indicated, because, while these credits were not *actually credited* upon the bond when Mrs. Esther Singleton had them assigned to her by her husband, Robert Singleton, on the 15th December, 1893, yet she was obliged to take them subject to all the infirmities to which they were subject while in the hands of Robert Singleton as her assignor. In *Patterson* v. *Rabb,* 38 S. C., at page 152, it is said: "That

under our law, an innocent assignee of a chose in action under seal takes such chose in action subject to all the infirmities in and against his assignor." This doctrine merely binds her to take the bond and mortgage subject to such infirmities as existed against her assignor, Robert Singleton, at the date of the assignment to her, on the *15th December, 1893.* She is not bound by anything which may have occurred by and through her assignor after that date. Hence the fraud of Robert Singleton practiced on the plaintiffs on the 4th January, 1894, unless she had participated therein, and we have hereinbefore determined that she did not so participate, will not affect her. The mere fact that she did not have her assignment placed upon record at that time, cannot affect her. She was not bound to do so. In *Williams & Co.* v. *Paysinger,* 15 S. C., 171, this Court held: "Notice to a mortgagor of the assignment of a mortgage is not necessary to its validity. There is no law requiring the assignment of a mortgage to be recorded, and if it had been put of record, it would not have amounted to constructive notice." In adjusting the equities of the plaintiffs as against Robert Singleton prior to 15th December, 1893, there is only one matter which disturbs us, and that matter has not been suggested in the case at any point, and that is as to the plaintiff's right to have the personal property of their mother which went into the hands of Robert Singleton *in excess of his one-third share thereof* before the 21st October, 1893, credited upon this bond and mortgage; for if the said Robert Singleton received more than his one-third share thereof, such excess ought to be credited on this bond and mortgage. If he did so appropriate to his own use more than one-third of such personal property, he actually converted to his own use the property of these plaintiffs, and to such an extent his claim through this bond and mortgage was entitled to be reduced. Our only reason for mentioning this latter possible condition of things is that equity delights in completeness—she wishes to dispose of the whole and not by piecemeal. The testimony showed that Mrs. E. A. Singleton had

a considerable personal estate, as was disclosed in her returns for taxation; and such being the case, there is no evidence before the Court that this matter was ever settled between the parties; his (Robert's) administratrix, Mrs. A. E. Singleton, is a party to this action, as such administratrix. The only settlement before the Court between the father and sons is as to the land. In the abundance of caution, when after awhile we adjudge that Mrs. Esther Singleton, as an individual, is entitled to a judgment of foreclosure of her mortgage to the extent of $730.84, we will annex to such decree the right of the plaintiffs, if exercised within thirty days after the *remittitur* in this cause reaches the Circuit Court, to notify in writing the defendant, as an individual, and as administratrix of Robert Singleton, deceased, that they elect to show by proof that Robert Singleton used more than one-third of the personal property of Mrs. A. E. Singleton after death, without the consent of the plaintiffs, and such excess of his one-third share shall be credited, as of the 15th December, 1893, wth interest thereon at seven per cent. per annum from that date to the 7th day of April, 1901, on the $730.84 decreed to defendant.

The fifth and sixth exceptions of defendant are as follows: "5. That his Honor erred in not holding that the mortgage of A. E. Singleton to Woodward Holland was assigned to Esther Singleton before the transactions between Robert Singleton and his sons, and was in no way affected by these transactions. 6. That his Honor erred in not ordering a foreclosure of said mortgage and a sale of the premises covered by said mortgage." These exceptions are sustained, having already been passed upon in effect.

It is the judgment of this Court, that the judgment of the Circuit Court, wherever the same is inconsistent with the views herein expressed, be reversed. It is further adjudged by this Court, that the defendant, Esther Singleton, is entitled to recover the sum of $730.64, and interest thereon from 7th April, 1901, at seven per cent. interest from that date, by a foreclosure of her mortgage on the lands described

in the complaint; but to such judgment in her favor is annexed the condition that if the plaintiffs give to her, or her attorneys, within the thirty days first ensuing after the remittitur reaches the Circuit 'Court, notice in writing that they propose to show in this action that her assignor and her intestate, Robert Singleton, used more than a one-third part of the estate of his wife, Mrs. A. E. Singleton, and shall afterwards by proofs establish such fact, that then and in that event the excess over his said one-third part of the personal estate of his deceased wife, shall be entered as a credit on the sum of $730.64 herein adjudged defendant as a part payment thereof, or in whole payment thereof, as the case may be, with interest on such excess over the said one-third part from the 15th December, 1893, at seven per cent. per annum. But if the plaintiffs refuse or neglect to take any such steps within the said thirty days, then and in that event the defendant may enforce her judgment according to law.