731 S.E.2d 547

BAC HOME LOAN SERVICING, L.P., f/k/a Countrywide Home Loan Servicing, L.P., successor in interest to Defendant Mortgage Electronic Registration Systems, Inc., MIN #: 100039032108093192, Appellant,

v.

Debra KINDER, Personal Representative of the Estate of George William Brelsford, IV a/k/a George W. Brelsford, and Debra Kinder, Personal Representative of the Estate of Patricia M. Brelsford, Respondents.

No. 27146.

Supreme Court of South Carolina.

Heard June 6, 2012.

Decided July 25, 2012.

Rehearing Denied Sept. 6, 2012.

Sean A. O'Connor, of Finkel Law Firm, LLC, of Charleston, for Appellant.

James L. Verenes, of Fox & Verenes, of Aiken, for Respondent.

Justice HEARN.

This case presents us with two issues: (1) whether an assignee of a note and mortgage has a right to surplus funds generated by the foreclosure of a prior mortgage on the property, and (2) whether that assignee is barred from recovering the surplus funds because the note and mortgage assigned to it allegedly were closed without attorney participation. We hold the assignee may recover the surplus funds even though it was not a lienholder of record at the time of the sale. We also clarify our decision in *Matrix Financial Services Corp. v. Frazer*, 394 S.C. 134, 714 S.E.2d 532 (2011), and hold because the mortgage was filed before *Matrix*, whether it was closed without the services of an attorney would not bar the assignee from receiving the surplus funds.

## FACTUAL/PROCEDURAL BACKGROUND

George Brelsford executed and delivered a promissory note and mortgage (Mortgage 1) for $30,000 to Citizens Bank of Effingham (Bank) on July 2, 2004. Mortgage 1 was secured by real property in Aiken County and recorded in the Aiken County Register of Mesne Conveyance on July 6, 2004. Brelsford executed and delivered a second promissory note to Quicken Loans, Inc. on March 21, 2007, for the sum of $149,000 and secured payment of this note with a mortgage (Mortgage 2) in favor of Mortgage Electronic Registration Systems, Inc. (Systems) as nominee for Quicken. Mortgage 2 was secured by the same real property as Mortgage 1 and was duly recorded on April 20, 2007.

Brelsford died on August 11, 2009. After determining its loan was in default, Bank foreclosed on the property. Brelsford's estate as well as Systems were named as defendants and properly served, but neither responded nor were present at the sale, and they were therefore held in default. The property was sold on July 6, 2010 to a third party for the sum of $116,000, which, after satisfying the debt to Bank, left $79,405.25 in surplus funds.

On July 30, 2010, Systems assigned its note and mortgage to BAC Home Loan Servicing, L.P., and BAC recorded this assignment on August 20, 2010. BAC then filed a claim for the surplus funds pursuant to Rule 71(c), SCRCP, and a hearing was held on October 28, 2010. In the master's

original order, he found that BAC did not have standing to claim the surplusage under Rule 71(c) because it did not have "a lien on the mortgaged premises at the time of sale," specifically noting that BAC did not have a recorded interest until August 20, 2010, well after the July 6, 2010 sale date. Although arguments were also made that Mortgage 2 was closed without attorney participation in contravention of the law, the master held he did not have sufficient evidence to make a ruling on the issue and invited the submission of additional evidence in a Rule 59(e), SCRCP, motion. Pending the submission of a Rule 59(e) motion, the master awarded the surplus funds to Brelsford's estate.

BAC made a Rule 59(e) motion arguing that the master erred in barring its recovery of the funds because, as an assignee, it was not required to record its assignment to have a valid claim. Similarly, BAC argued that as an assignee it received all the rights Systems would have had, including the right to request the surplus funds. It further contended whether Mortgage 2 was closed by an attorney was irrelevant because BAC was not a party to that closing. Finally, BAC argued that as a holder in due course of the note underlying the mortgage, it took free from the defense that the transaction was illegal.

The master disagreed and again held BAC could not claim the surplus funds, reasoning that Rule 71(c) only allowed claims by those who had a "lien" at the time of the sale and because the lien on the property was extinguished by the sale, Systems' assignment of the mortgage to BAC was "an empty shell, since the lien no longer existed." Also, although no additional evidence was presented, the master concluded that the HUD–1 closing statement, which had been the only evidence before him at the initial hearing, was proof that no attorney participated in the closing of Mortgage 2. He therefore held that even if BAC were a holder in due course, because Systems would be barred from recovery because of this illegality, so would BAC. He therefore denied BAC's motion. This appeal followed.

## ISSUES PRESENTED

I. Did the master err in holding BAC could not recover surplus funds because it was not a lienholder of record at the time of the sale?

II. Did the master err in holding BAC was barred from recovering surplus funds because he found no attorney participated in the closing of Mortgage 2?

## LAW/ANALYSIS

### I. STATUS AS LIENHOLDER

■ BAC first argues the master erred in holding that it could not recover the surplus funds from the foreclosure sale because it was not a lienholder of record at the time of the sale. We agree.

■ Rule 71 states, in part, that "[i]n the event of a surplus fund resulting from the sale [on foreclosure], . . . [a]ny party to the action, or any person who had a lien on the mortgaged premises at the time of the sale, . . . may have a hearing to determine [entitlement to the surplus fund]." Rule 71(c), SCRCP. In the master's original order, he found that because the assignment was not recorded until after the sale, BAC did not have a valid "lien on the mortgaged premises at the time of sale." However, the assignment of a mortgage does not need to be recorded, and failure to do so has no effect on the rights of the assignee. *Singleton v. Singleton*, 60 S.C. 216, 235, 38 S.E. 462, 469 (1901). Therefore the date of recordation of the assignment has no effect on the transfer of Systems' rights to BAC.

■ Additionally, although the master noted that Systems was a party to the foreclosure action and had a lien on the subject property, he concluded that the lien was terminated by the foreclosure sale and thus the subsequent assignment to BAC "was an empty shell, since the lien no longer existed." *See* S.C.Code Ann. § 29–3–780 (2007) ("Upon . . . a sale of lands pursuant to decree of foreclosure, the officer of the court making the sale shall cause to be recorded in the office where the foreclosed mortgage is recorded a release, cancellation, and satisfaction of the lien."). He also found no evidence Systems had "specifically assigned its right to pursue the surplus funds under Rule 71(c), SCRCP." However, the extinguishment of the lien has no bearing on this case because BAC is not claiming it still has a lien over the property. Instead, it merely claims an interest in the proceeds from the foreclosure sale. The master's ruling ignores the fact that Systems retained the right to claim the surplus funds pursu-

ant to its original lien and the underlying note, and it is this right Systems assigned to BAC. Moreover, in assigning the note and mortgage, we see no reason why Systems would be required to explicitly assign the right to surplus funds for BAC to exercise it. An assignee stands in the shoes of the assignor. *Moore v. Weinberg,* 373 S.C. 209, 220, 644 S.E.2d 740, 745 (Ct.App.2007). Thus, an innocent assignee receives all the rights of his assignor. *Singleton,* 60 S.C. at 234–35, 38 S.E. at 469. Because Systems could have made this claim under Rule 71(c), BAC is entitled to make the same claim. To hold otherwise would ignore settled principles governing assignments.

## II. ATTORNEY PARTICIPATION IN CLOSING

■ BAC also argues the master erred in finding Mortgage 2 was closed without attorney supervision which should bar BAC's claims. We find it unnecessary to address the factual issue of whether an attorney was present at the closing because even if one had not been present, our holding in *Matrix* would allow BAC's claims to proceed.

In *Matrix* we reiterated that the closing of a loan without attorney supervision constitutes the unauthorized practice of law. Furthermore, we held that engaging in this unlawful behavior would preclude a lender from obtaining equitable relief. *Id.* at 140, 714 S.E.2d at 535. However, in a substitute opinion issued on rehearing, we explained that this holding would be prospective only, stating we would "apply this ruling to all filing dates after the issuance of this opinion," which was August 8, 2011. *Id.* To the extent some confusion apparently exists as to what filing date *Matrix* referred to, we clarify now that it is the date the document a party seeks to enforce was filed. Here, Systems' mortgage was recorded on April 20, 2007, well before the issuance of *Matrix.* Thus, regardless of whether an attorney participated in the closing of Mortgage 2, BAC would not be barred from recovery by the illegality.

## CONCLUSION

Based on the foregoing, we reverse the master's order and award the surplus funds to BAC.

TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur.