2225

The FIRST SAVINGS BANK, FSB, Respondent v. CAPITAL INVESTORS, a South Carolina Joint Venture, J. Key Powell, Hampton N. Metts, Cynthia R. Engel and Albert E. Engel, Defendants/Third-Party Plaintiffs v. Ray DAVIS, Al Barnett and Thomas B. McTeer, Jr., Third-Party Defendants, of whom Capital Investors, a South Carolina Joint Venture, J. Kay Powell, Cynthia R. Engel and Albert E. Engel are Appellants.

Court of Appeals

(450 S.E. (2d) 83)

361

*Sean M. Sullivan* and *Helen Davis Chaitman, Ross & Hardies,* Somerset, NJ, and *Daryl J. Corbin,* Florence, *for appellants.*

*Jacquelyn L. Bartley* and *James M. Brailsford, III, Robinson, McFadden & Moore,* Columbia, *for respondent.*

*James D. Cooper, Jr., Cooper, Coffas & Megna,* Columbia, *for defendant, third-party plaintiff Hampton N. Metts.*

Heard June 9, 1994.

Decided Sept. 19, 1994; Reh. Den. Nov. 2, 1994.

The First Savings Bank, FSB, brought suit against Capital Investors, a South Carolina Joint Venture, and individual members thereof, to recover on a promissory note and personal guaranties. The defendants answered and counterclaimed alleging fraudulent inducement, breach of fiduciary duty, civil conspiracy and negligent misrepresentation. The

trial court granted the bank's motion for summary judgment. Capital Investors and members J. Key Powell, Cynthia Engel and Albert Engel appeal. We affirm.

Capital Investors was organized by Metts,[1] Powell, Cynthia Engel, Albert Engel, and Edward J. Sebastian[2] to assist Thomas B. McTeer, Jr. in raising working capital for McTeer's real estate operations. Capital Investors secured a $1,250,000 loan from the bank, and delivered the proceeds to McTeer. To secure the loan, the bank required the members of Capital Investors to enter guaranty agreements for $250,000 each. These agreements were signed by Metts, Powell, Albert Engel, and Sabastian, individually, and Cynthia and Albert Engel jointly.

Under the arrangement between Capital Investors and McTeer, McTeer would make monthly payments to Capital Investors which in turn would make the loan payments to the bank. McTeer further agreed to pay each of the investors a fee of $1,000 per month as long as the loan was outstanding. After a number of monthly payments. McTeer declared bankruptcy. Capital Investors obtained several extensions from the bank, but ultimately went into default on the loan, and the bank demanded payment of the outstanding balance of $1,297,379.67, plus interest. Capital Investors answered the bank's complaint and counterclaimed, seeking to avoid the loan obligation and also seeking actual and punitive damages from the bank.

Capital Investors maintained the bank approached the members of Capital Investors with the plan to loan money to McTeer through Capital Investors, that Al Barnett and Ray Davis of the bank, along with McTeer, led Capital Investors to believe the loan would be structured through Capital Investors for internal bank reasons only, and that Capital Investors would not have agreed to the loan if the bank had disclosed specific financial information about McTeer.

In her deposition, Cynthia Engel testified the loan was to be in the name of Capital Investors for only a short period, that McTeer needed money for an upcoming closing but was over his legal lending limit, and that the individual members of Capital Investors "didn't have to worry about it" because it

---

[1] Metts filed for Chapter 11 bankruptcy shortly after this lawsuit was filed.

[2] Sebastian reached an independent settlement with the bank.

was McTeer's loan. When asked how the bank misled Capital Investors in this transaction, Cynthia Engel stated as follows:

> Al Barnett came to my office to pick up . . . financial statement[s] . . . and he said, "Cynthia, have you seen Tom's financial? And I said, "Yes. He has assets of $70,000,000". . . . [H]e said, "Cynthia, you know if Tom doesn't pay this loan, you all have to pay it." I said, "Al, we are friends," . . . "you know I don't have $250,000. . . . That is not my understanding. My understanding is we are not going to have to pay this note. I am not doing it if we have to pay this note." And he said, "Cynthia, I am just picking up the financial statements, but you better check it with them." I said, "I already know what Tom has said to me that Ray Davis has said." He said, "You better check it with them." So, I said "Okay, I will." So I got up very nicely, I went next door to Tom's office. I said, "Tom, Al Barnett says if you don't pay this note, we have to pay it." Al (sic) said "Cynthia, I don't even know that boy . . . I am calling Ray Davis." . . . So he picks up the phone and calls Ray Davis and tell Ray Davis that Al is there "screwing up his deal." . . . He says to me, "Al is just being a loan office." He hangs up the phone and says, "I have taken care of it. Everything is okay. Al Barnett will never set foot in this office again."

Cynthia Engel further stated she was not concerned about the note because of the telephone conversation between McTeer and Davis. She admitted, however, that she could only hear McTeer's end of the conversation.

The loan documents included a commitment letter from the bank, signed by the members of Capital Investors, which provided as follows:

> It is expressly understood that [the bank] is looking to the individuals that make up the Capitol Investors joint venture, either collectively or individually for repayment of this loan. [The bank] has not under written and is not relying on any entity or individual that is not part of this loan commitment for repayment of the debt.

Furthermore, the guaranty agreements each include the following language:

> Notwithstanding the aggregate sum payable to [the bank] at any time pursuant to the Obligations, the liability of the undersigned to [the bank] on account of this Guaranty Agreement shall not exceed at any one time the aggregate principal sum of $250,000.00 together with interest and all costs and expenses, including reasonable attorneys fees, paid or incurred by [the bank] in collecting and/or enforcing the Obligations.

> The undersigned agrees to pay to [the bank] unconditionally and absolutely upon demand the amount owing on any of the Obligations, should the same not be paid in full by Borrower when due, whether by acceleration or otherwise, together with interest and all costs and expenses, including reasonable attorneys fees, paid or incurred by [the bank], in collecting and/or enforcing the Obligations.

As to the issue of attorney's fees, the commercial note more specifically provided:

> In the event that [the bank] turns this Note over to an attorney for collection, or for the protection of this Note or any instrument given to secure the payment of this Note . . . the undersigned agrees to pay all costs incurred thereby, including reasonable attorney's fees, which shall be deemed in the even of default to be 15% of the unpaid balance after a default.

The trial court found Capital Investors failed to create a material issue of fact as to the claims of fraud or illegality, and that Capital Investors would not otherwise be permitted to offer extrinsic evidence to contradict or vary the terms of the loan documents. The court further found, assuming the truth of the defendant's allegations, there was a failure of proof as to several elements of fraud, most notably, the right to rely. The court also stated this was an "arm's length" credit transaction between sophisticated investors and a major lending institution in which no fiduciary relationship was created. Finally, the court rejected Capital Investors' argument the note and guaranties were illegal contracts under 18 U.S.C. § 656, finding the statute dealt with criminal embezzlement and was therefore inapplicable to the facts of this case. The court granted summary judgment in favor of the bank, and held

Capital Investors liable for $1,188,619.22, plus prejudgment interest, costs and fifteen percent in attorneys' fees. The court held the individual guarantors each liable under their respective guaranties.

## I.

On appeal, Capital Investors argues the trial court erred in granting summary judgment against the defendants because the record contained substantial evidence the bank and its officers fraudulently failed to disclose to the defendants material information concerning the transaction at issue. Capital Investors also argues the trial court erred in granting summary judgment when the record contained substantial evidence the bank and its officers fraudulently misrepresented the bank's intention to look solely to McTeer for repayment of the loan in order to induce the defendants to enter into the transaction. We disagree.

We first note the deposition testimony of Cynthia Engel shows at least one bank employee indicated to Mrs. Engel that the individuals would be liable on the note in the event that McTeer did not pay it. She chose to believe the one-sided phone conversation of McTeer as opposed to the information supplied by the bank employee. Further, the commitment letter and the guaranty agreements clearly indicate the bank was looking to the individual investors in Capital Investors for repayment of the loan.

We hold as a matter of law these sophisticated plaintiffs could not have reasonably relied[3] on alleged oral representations that directly conflict with the specific written terms of the guaranty agreements they each signed. *See Burwell v. South Carolina National Bank*, 288 S.C. 34, 340 S.E. (2d) 786 (1986) (unless ignorant and unwary, one cannot complain of fraud and misrepresentation in the content of a document if truth could have been ascertained by reading

---

[3] In order to prove fraud, the following elements must be shown: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. *Ardis v. Cox*, — S.C. —, 431 S.E. (2d) 267 (Ct. App. 1993).

it); *see also Citizens and Southern National Bank of S.C. v. Lanford,* — S.C. —, 443 S.E. (2d) 549 (1994) (bank has no duty to explain to an individual what he could learn by simply reading the document). Accordingly, there exists no issue of material fact on the plaintiff's claims of fraud, and summary judgment was proper. *See Lanford* (summary judgment appropriate when it is clear there is no genuine issue of material fact, and moving party is entitled to judgment as a matter of law).

## II.

Capital Investors next argues the court erred in entering judgment against Albert Engel in the principal amount of $500,000 because his guaranty was limited to $250,000. This argument is without merit. The record reveals Albert Engel signed two separate guaranty agreements, one on his own behalf, and one as guarantor with his wife, Cynthia Engel. Albert Engel's liability was accordingly $250,000 for each guaranty.

## III.

Finally, Capital Investors contends the trial court erred in awarding attorney's fees without making a determination of the reasonableness of the attorney's fees. We disagree.

Where a contractual obligation provides only that a party is to pay "reasonable attorney's fees," the amount is unliquidated and, therefore, requires findings on the reasonableness of the award. *Thomas & Howard Company, Inc. v. T.W. Graham and Co.,* — S.C. —, 444 S.E. (2d) 541 (Ct. App. 1994). However, where a contractual provision contains a specific rate for attorney's fees, the amount is governed by the contract. *Dedes v. Strickland,* 307 S.C. 155, 414 S.E. (2d) 134 (1992).

Although the individual guaranty agreements provided only for the collection of reasonable attorney's fees, placing no set percentage or figure on the amount, the note, which the agreements guarantied, specifically provided that reasonable attorney's fees were 15% of the unpaid balance. Accordingly, the court properly awarded fees pursuant to the terms of the note and guaranty agreements.

For the foregoing reasons, the order of the trial court is hereby

Affirmed.

HOWELL, C.J., and LITTLEJOHN, Acting Judge, concur.