16891

ST. PAUL-MERCURY INDEMNITY CO. v. DONALDSON

(83 S. E. (2d) 159)

*Messrs. Lindsay & Lindsay,* of Bennettsville, *for Appellant,*

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *for Respondent,*

July 14, 1954.

LEGGE, Justice.

On April 10, 1950, respondent, at the instance and request of appellant, executed as surety for appellant a bond to the State of California in the amount of two thousand ($2,000-.00) dollars, conditioned, as required by the sales and use tax law of that State, for the payment of all amounts, including interest, penalties and costs, which should become due by appellant to said State in connection with appellant's plumbing business then being conducted in the City of Ventura in said State. In his written application to respondent for said bond, appellant agreed to indemnity and save harmless the respondent and on demand to pay to it any and all claims, demands, losses and damages of every nature and kind, together with counsel fees and expenses which respondent should sustain by reason or in consequence of such suretyship. Appellant having failed to pay an amount due

by him to the State of California under its sales and use tax law while the bond was in force, respondent was required to and did on October 29, 1951, pay to the State of California the amount of the bond. In connection with the adjustment and payment of said claim, respondent also incurred expenses aggregating thirty-five and 30/100 ($35-.30) dollars, which it paid on March 26, 1952. Thereafter, appellant having become a resident of Marlboro County, South Carolina, respondent brought this action in the County Court of that County, praying judgment against appellant for the amount so paid, with interest, and for attorneys' fees. Appellant by his answer admitted all of the allegations of the complaint, in substance as stated above, except those of Paragraph Six, to the effect that respondent had incurred expenses aggregating thirty-five and 30/100 ($35.30) dollars in connection with the adjustment and payment of the tax claim. By way of affirmative defense, it was alleged that the defendant had on March 7, 1952 filed a voluntary petition in bankruptcy in the United States District Court for the Eastern District of South Carolina, had been adjudged bankrupt and had been discharged as such on June 10, 1952; that through oversight respondent had not been listed in the schedule as a creditor of the estate; but that respondent had had actual notice of the bankruptcy proceeding during its pendency as appellant was informed and believed; and that the debt set forth in the complaint was barred and discharged by the bankruptcy.

Respondent moved to strike the answer as sham and frivolous, and for judgment on the pleadings, and submitted, in connection with the motion, the application for the bond, the form of the bond itself, and two drafts showing payment by the respondent to the State Board of Equalization of the State of California, under the bond in question, of two thousand ($2,000.00) dollars on October 29, 1951, and of thirty-five and 30/100 ($35.30) dollars on March 26, 1952, respectively. No objection was made to consideration of these exhibits as part of the motion.

The County Court held that respondent, having paid the tax liability of appellant, was subrogated to the right of the taxing authority, and that the claim was not affected by appellant's discharge in bankruptcy, and thereupon ordered judgment in favor of respondent for the amount of two thousand ($2,000.00) dollars, with interest at six (6%) per cent from October 29, 1951; for the amount of thirty-five and 30/100 ($35.30) dollars, with interest at six (6%) per cent from March 26, 1952; and for the amount of two hundred ($200.00) dollars, which the court found to be a reasonable fee for respondent's attorneys.

Error is charged under six exceptions, which have been fully considered but need not be separately discussed. Appellant argues that the provision contained in the application for the bond, whereby appellant agreed to indemnify respondent against loss by reason of its suretyship, constituted a contract of indemnity, and not of subrogation. But subrogation does not depend upon contract; it follows as the legal consequence of the acts and relationship of the parties. 50 Am. Jur. Subrogation, Sec. 5. *Powers v. Calvert Fire Ins. Co.,* 216 S. C. 309, 57 S. E. (2d) 638, 642, 16 A. L. R. (2d) 1261.

Appellant also contends that in the absence of statute the doctrine of subrogation is not applicable to vest in an individual the rights and powers of the State in respect of a claim for taxes. It is true that in the earlier cases a tax was considered to be not a debt in the ordinary sense of the word, and therefore not subject to assignment by the taxing authority to any individual either by contract or through the equitable doctrine of subrogation. Such was the holding in *Hinchman v. Morris,* 29 W. Va. 673, 2 S. E. 863, 865, cited in appellant's brief; but this view has been superseded by the present popular conception that a tax is an obligation owed by the taxpayer, and that, where there is personal liability for it, the tax becomes, in a broader sense, a debt. In the later West Virginia case of *Camden v.*

*Fink Coal & Coke Co.,* 106 W. Va. 312, 145 S. E. 575, 576, 61 A. L. R. 584, the court said:

"*Hinchman v. Morris* was written in 1887. Since then the law of subrogation has been greatly expanded. * * * It is now conceded that there is nothing in the nature of a lien for taxes to prevent the application of the equitable doctrine of subrogation, where that doctrine would otherwise apply."

Cf. *American Tobacco Co. v. South Carolina Nat. Bank,* D. C., 15 F. Supp. 215, in which it was held that where a bank had closed before payment of checks which it had certified and which a taxpayer had sent in payment of internal revenue taxes, the taxpayer was subrogated to the statutory right of the United States to lien and priority, and was entitled to preferred claim against the assets of the bank for the amount of such checks.

In *Fidelity & Casualty Co. v. Whitaker,* 1933, 176 Ga. 656, 168 S. E. 607, referred to in the Order of the trial court, where a cigarette dealer, suing to enjoin collection of a Georgia sales tax, was granted a supersedeas upon condition that he file bond for payment of the tax stamps, and thereafter judgment against the dealer was affirmed and his surety paid for the stamps, the surety was held subrogated to the rights of the State and entitled to recover from the dealer notwithstanding the dealer's discharge in bankruptcy. In support of his contention that subrogation to the rights of the State in respect of a tax must be founded on a statute, appellant points out that in the case of *Fidelity & Casualty Co. v. Whitaker, supra,* the court based its holding, as to subrogation, on the earlier case of *Livingston v. Anderson,* 80 Ga. 175, 5 S. E. 48, and that in that case the court had referred to Sections 2176 and 2177 of the Georgia Code of 1882 as authority for subrogation of the sureties on a defaulting tax collector's bond to the rights of the State. But those sections of the Georgia Code, which are only partially quoted in *Livingston v. Anderson,* relate to subrogation in general, and not with specific regard to tax claims, and read, in full, as follows:

"§ 2176. A surety who has paid the debt of his principal is subrogated, both at law and in equity, to all the rights of the creditor, and in a controversy with other creditors ranks in dignity the same as the creditor whose claim he paid.

"§ 2177. He is entitled, also, to be substituted in place of the creditor as to all securities held by' him for the payment of the debt."

The modern concept of the doctrine of subrogation in respect of tax claims is recognized in *In re Baltimore Pearl Hominy Co.,* 4 Cir., 5 F. (2d) 553, where it was held that creditors who, at the request of the debtor, and to prevent seizure and sale of the property, had paid taxes due by the debtor under an agreement with him that if possible they should be subrogated to the lien of the city for taxes unpaid, were entitled to subrogation to the lien in the distribution of the assets of the bankrupt estate.

Both in the Bankruptcy Act of 1898 and in the Chandler Act of 1938 whereby the former Act was comprehensively revised, it is expressly provided that a discharge in bankruptcy shall not release a bankrupt from liability for taxes levied by the United States or any state, county, district or municipality, Title 11, U.S.C.A. § 35.

The tax due by appellant to the State of California was, under the terms of the Bankruptcy Act, a nondischargeable obligation; and respondent, having paid it, became subrogated not only to the claim, but to its non-dischargeable quality. Remington on Bankruptcy, Fifth Edition, Vol. VII, paragraph 3530.

There is no merit in appellant's contention that, because respondent paid the tax prior to the bankruptcy, there was at the time of the bankruptcy no tax "due" within the meaning of the Bankruptcy Act, and that from the time of such payment the tax lost its identity as such and respondent had no recourse against appellant except by virtue of the indemnity agreement contained in the application for the bond. The doctrine of subrogation is founded

on the fictional premise that an obligation extinguished by a payment made by a third person is to be treated as still subsisting for the benefit of such third person, whereby he is substituted to the rights of the creditor to whom he has made such payment. *Aetna Life Insurance Co. v. Town of Middleport,* 124 U. S. 534, 8 S. Ct. 625, 631, 31 L. Ed. 537. Cf. *In re Baltimore Pearl Hominy Co., supra.*

Exception 2 charges that the trial court erred in striking appellant's answer, for the reason that it raised the factual issue of whether or not respondent has actual notice of bankruptcy. "It is the duty of the court to strike out an answer as sham, notwithstanding the fact that the answer contains a general denial, if admissions in the remainder of the answer disclose the fact that there is no defense." *Ocean Forest Co. v. Woodside,* 184 S. C. 428, 192 S. E. 413. In the case at bar, to the extent that respondent's claim was for recovery of the amount of the tax paid by it to the State of California, it is immaterial whether or not respondent had actual notice of appellant's bankruptcy, because, as we have seen, the claim was, to that extent, nondischargeable. But the complaint sought recovery not only of the amount of the tax paid, with interest, but also of expenses incurred by it in the amount of thirty-five and 30/100 ($35.30) dollars, and attorneys' fees. As to these additional items respondent cannot claim subrogation to the right of the taxing authority, for the simple reason that in those items the taxing authority had no right. To the extent of the claim for reimbursement of expenses, and for attorneys' fees, therefore, respondent's cause of action, being founded on the contract only, would be barred if respondent had actual notice of appellant's bankruptcy in time to avail itself of the benefits of the Bankruptcy Act. Title 11, U.S.C.A. § 35, sub. a(3). The affirmative defense thus pleaded in the answer having raised a material issue of fact as to that portion of respondent's cause of action concerned with reimbursement of expenses and with attorneys' fees, the motion to strike should

have been refused. *Germofert Mfg. Co. v. Castles,* 97 S. C. 389, 81 S. E. 665. Exception 2 is sustained.

In the order for judgment, the trial court allowed interest on the item of two thousand ($2,000.00) dollars from October 29, 1951, the date of its payment, and on the item of thirty-five and 30/100 ($35.30) dollars from the date of its payment to-wit: March 26, 1952. Exception 4 charges that the trial court "erred in granting plaintiff's judgment on the basis of its contractual demand on the assumed basis of subrogation which had not been pleaded, and in allowing the additional penalties and attorneys' fees which arose strictly under contract." As the case must be remanded for trial, we have given consideration to the allowance of interest, although that question can hardly be said to have been raised under the exception above quoted, and it is not touched by any other exception. Until the decision in *City of New York v. Saper* in 1949, 336 U. S. 328, 69 S. Ct. 554, 93 L. Ed. 710, the decisions were not in agreement on the question of whether interest on a liquidated claim against a bankrupt should be allowed to the date of payment of the claim or only to the date of the bankruptcy. In the case just cited, where the claim involved was for sales taxes due the City of New York, the question was finally resolved, and it was held that a tax claim against a bankrupt bears interest until the date of the filing of the petition in bankruptcy, and not until payment. As a claim for taxes, whether proved or not, is unaffected by a discharge in bankruptcy, it would seem to follow that interest on such a claim by the taxing authority stops with the filing of the petition in either event. The subrogee of the taxing authority can have no higher standing. Interest on the amount paid by respondent to the State of California for taxes due by appellant should be allowed from the date of such payment to the date on which appellant filed his petition in bankruptcy. If upon trial it shall be established that respondent's claim for reimbursement of expenses is not barred by appellant's discharge in bankruptcy, interest on that item may be

allowed to, but not beyond, the date of the filing of the petition.

Reversed and remanded.

STUKES, TAYLOR and OXNER, JJ., and BRUCE LITTLE-JOHN, Acting Associate Justice, concur.