### 23569

George P. DEDES, Respondent v. Bobby W. STRICKLAND, Northwoods Auto Sales, Inc., BWS Enterprises, a South Carolina General Partnership, First Federal Savings & Loan Association of South Carolina and Georgia-Pacific Investment Company, Defendants, of whom First Federal Savings and Loan Association of South Carolina is Appellant-Respondent, and Bobby W. Strickland is Respondent-Appellant.

(414 S.E. (2d) 134)

Supreme Court

*John R. Chase,* Florence, *for appellant-respondent.*

*Joseph F. Kent,* Charleston, *for respondent-appellant.*

*Lawrence E. Richter, Jr.* and *Thad H. Vincent,* Charleston, *for respondent.*

Heard March 6, 1991.

Decided Feb. 10, 1992.

FINNEY, Justice:

Appellant-Respondent First Federal Savings and Loan Association of South Carolina (First Federal) appeals from the master-in-equity's finding that a real estate mortgage of Respondent George P. Dedes held priority over First Federal's mortgage on the same property. We affirm in part and remand in part.

On February 27, 1986, First Federal loaned $175,000 to Respondent-Appellant Bobby W. Strickland secured by a mortgage on several parcels of real estate, including the 1.72 acre tract which is the subject of this controversy. First Federal's mortgage was recorded March 3, 1986.

On August 10, 1987, Dedes loaned $275,000 to Strickland and BWS Enterprises, a General Partnership, of which Strickland was a general partner. The loan was secured by a mortgage on real estate, including the same 1.72 acre tract. Dedes' mortgage was recorded August 25, 1987. Concurrent with the execution of the note and mortgage, Strickland, as President of Northwoods Auto Sales, Inc., entered an agreement to execute and deliver within six months a mortgage on another parcel of land as additional security for the loan.

On February 5, 1988, First Federal refinanced the balance of approximately $167,512 remaining on the loan Strickland obtained February 27, 1986, satisfied the mortgage, and recorded the satisfaction. Strickland executed a new note dated February 5, 1988, and another mortgage of even date on the identical properties, including the 1.72 acres. The mortgage was recorded February 10, 1988.

On December 19, 1988, Dedes instituted this foreclosure action against Strickland, First Federal, and the other named defendants seeking foreclosure on real estate securing debt owed him by Strickland, including the 1.72 acre tract in question.

First Federal answered, and subsequently moved to amend its Answer to assert as a second and affirmative defense the doctrine of equitable subrogation as to its mortgage on the 1.72 acre tract. The trial court ruled that First Federal's Answer should be treated in all respects as if the affirmative

defense of equitable subrogation had been asserted *ab initio* "if First Federal shall prove to the satisfaction of the court that it is entitled to assert such defense . . ." This and other issues were referred with finality to the master-in-equity.

The master held a hearing and found that First Federal had failed to meet the four elements required to invoke the doctrine of equitable subrogation. As a result, the master (a) awarded attorneys' fees to Dedes in the amount of $103,710.52; (b) determined that Dedes' mortgage on the 1.72 acre tract was superior in priority to First Federal's mortgage; (c) held that Dedes was entitled to foreclosure; and (d) directed a sale of the security properties, including the 1.72 acre tract.

First Federal and Strickland appealed. A supersedeas bond for the appeal of First Federal was approved and the sale of the 1.72 acre tract was stayed pending disposition of the appeal.

On appeal, First Federal alleges the master erred in the following particulars:

1. In failing to hold that First Federal was entitled to be equitably subrogated to a first mortgage position superior to Dedes on the 1.72 acre tract.
2. In determining that unusual procedure was utilized by First Federal in refinancing Strickland's debt.
3. In awarding Dedes attorneys' fees of $103,710.52.

We disagree.

In *Pee Dee State Bank v. Prosser*, 295 S.C. 229, 367 S.E. (2d) 708, 712 (App. 1988), our Court of Appeals cited the elements necessary to establish the right to be equitably subrogated. They are as follow:

1. The party claiming subrogation has paid the debt.
2. The party was not a volunteer but had a direct interest in the discharge of the debt or lien.
3. The party was secondarily liable for the debt or for the discharge of the lien.
4. No injustice will be done to the other party by the allowance of the equity.

Additionally, the party asserting the doctrine must not have had actual notice of the prior mortgage. *Id.*

We conclude that this record supports the master's finding that First Federal's proof fails to meet the test for entitlement to equitable subrogation. First Federal paid itself Strickland's outstanding debt by refinancing the balance owed. There is no showing of any direct interest necessitating discharge of the debt or lien. The record is silent as to what secondary liability First Federal could have had for Strickland's debt secured by its own first mortgage lien. Dedes could reasonably anticipate that once First Federal's 1986 note was paid and the mortgage satisfied, his mortgage would become a first lien superior to any subsequent mortgage. In our view, Dedes would suffer a grave injustice if First Federal were restored to priority lienholder under these circumstances.

First Federal asserts that its 1988 loan to Strickland was made upon the strength of representations by Strickland's attorney that the 1988 mortgage would constitute a first lien on the subject property. First Federal claims lack of notice, in that it did not discover the existence of Dedes' mortgage until after its 1986 mortgage was satisfied, and relies upon *Maxwell v. Epton,* 177 S.C. 184, 181 S.E. 16 (1935).

The facts in *Maxwell* are distinguishable. In *Maxwell,* this Court held that a private mortgage holder was entitled to have a cancellation invalidated and his mortgage reinstated to its prior position where the subsequent mortgage holder would not be injured by such restoration. There, the mortgage holder asserted that he had been misled, and the master found that the cancellation was due to mistake and ignorance of the existence of a subsequent mortgage.

To the contrary, there is no allegation that the conduct of Dedes misled or contributed to First Federal's ignorance of Dedes' mortgage at the time First Federal extinguished its first mortgage lien. Furthermore, we would not construe as a mistake the failure of First Federal, a commercial lender, to search the appropriate records and ascertain the existence of other liens. This Court does not find an abuse of discretion on the part of the master. Accordingly, we affirm his holding that Dedes occupies the position of priority lienholder superior to First Federal.

First Federal also argues that the master abused his discretion in allowing attorney fees in the amount of $103,710.52.

In this action, Dedes sought foreclosure on properties securing several loans by Dedes to Strickland. The notes for the respective loans contained provisions for attorneys fees as follows:

*Note dated August 10, 1987, for the principal amount of $175,000.* All costs and reasonable attorney's fees not less than ten (10%) percent of the amount involved in the event of foreclosure.

*Note dated May 24, 1988, for the principal amount of $205,000.* All costs and expenses of the collection of this note including reasonable attorney's fees of not less than fifteen (15%) percent of the outstanding principal and interest.

*Promissory Note Agreement dated November 2, 1988, evidencing indebtedness of $100,500.* In the event the document was placed in the hands of an attorney for collection, all costs of collection together with reasonable attorney's fees would be paid by Strickland.

With regard to the notes which provide for attorneys' fees at a specific rate in the event collection becomes necessary, it is a well established principle of law that where there is a contract providing for such, the amount of attorneys fees is governed by the contract.

Where the contract provides for "reasonable" attorneys' fees without specifying a rate or amount, the issue of attorneys' fees is left to the discretion of the trial judge and will not be reversed on appeal unless there is a showing of abuse of discretion. Factors to be considered by the trial court in making a determination as to attorneys fees are:

1. The nature, extent and difficulty of the legal services rendered;
2. The time and labor necessarily devoted to the case;
3. The professional standing of counsel;
4. The contingency of compensation;
5. The fee customarily charged in the locality for similar legal services; and
6. The beneficial results obtained.

*Baron Data Systems, Inc. v. Loter,* 297 S.C. 382, 377 S.E. (2d) 296 (1989). The record reflects that the master gave ample consideration to the foregoing and other factors in determining the attorneys' fee award. We do not find an abuse of discretion by the master in making the attorneys' fee determination.

However, other issues in this action relating to foreclosure were separately and simultaneously appealed to this Court, which reversed and remanded. *Dedes v. Strickland,* — S.C. —, 414 S.E. (2d) 132 (1992). Hence, the issue of attorney fees is remanded for recomputation in accordance with the final disposition of the case.

Accordingly, we affirm so much of the master's report as holds that Dedes occupies the position of first mortgage lienholder and remand the issue of attorneys' fees.

Affirmed in part; remanded in part.

GREGORY, C.J., and HARWELL, CHANDLER and TOAL, JJ., concur.