698 S.E.2d 244

**WACHOVIA BANK, N.A., Appellant,**

v.

**Ann T. COFFEY and Bank of America, N.A., Respondents.**

No. 4685.

Court of Appeals of South Carolina.

Heard Feb. 9, 2010.

Decided May 6, 2010.

Rehearing Denied Sept. 16, 2010.

James Y. Becker and R. David Proffitt, of Columbia, for Appellant.

Gregory M. Alford, of Hilton Head Island, for Respondent Ann. T. Coffey.

Steven R. Anderson, of Columbia, for Respondent Bank of America, N.A.

GEATHERS, J.

Appellant Wachovia Bank, N.A. (Wachovia), brought this mortgage foreclosure action against Respondents Ann T. Coffey (Mrs. Coffey) and Bank of America, N.A., seeking relief from Mrs. Coffey's default on a home equity loan made to her late husband for the purchase of a sailboat. The master-in-equity granted Mrs. Coffey's summary judgment motion and denied Wachovia's summary judgment motion. Wachovia challenges both the grant of summary judgment to Mrs. Coffey and the denial of its summary judgment motion on its unjust enrichment, equitable lien, and prejudgment interest causes of action on the ground that it proved the required elements of these causes of action. Wachovia also challenges the grant of summary judgment to Mrs. Coffey on its ratification and foreclosure causes of action on the ground that there were material factual issues preventing summary judgment. We affirm.

## FACTS/PROCEDURAL HISTORY

On January 27, 2001, Dr. Michael D. Coffey (Dr. Coffey), a Hilton Head obstetrician, was diagnosed with terminal lung cancer and was told that he had six months to live. On July 23, 2001, Dr. Coffey took out a $125,000 home equity line of credit with Wachovia. Mrs. Coffey was not aware of the transaction, and Wachovia's employees failed to verify Dr. Coffey's authority to mortgage the couple's home. Dr. Coffey signed a mortgage document purporting to secure the loan with the couple's home, which was titled in Mrs. Coffey's name only. On July 30, 2001, at Dr. Coffey's request, Wachovia wired the loan proceeds to the Hilton Head branch of Carolina First Bank to be deposited in the account of Hilton Head Yachts, Ltd., a business that had sold to Dr. Coffey a thirty-

six-foot Beneteau sailboat (the boat). The boat was then titled in the name of A & M Partners, Inc., a Delaware corporation in which Dr. Coffey and Mrs. Coffey were the only shareholders. Dr. Coffey told Mrs. Coffey that the boat was "paid for." Dr. Coffey, who handled virtually all of the couple's financial transactions, used the couple's joint checking account to make payments on the loan until his death in March 2005.

Soon after Dr. Coffey's death, Mrs. Coffey began a months-long effort to sell the boat. She continued the payments on the loan from Wachovia, but for several months she was unaware that the loan was for the boat purchase. She testified that by the fall of 2005, she realized that these payments related to Dr. Coffey's boat purchase but that she was under the impression that the loan was secured by a lien on the boat, rather than a mortgage on their home, and that the amount of the loan was much smaller than it actually was.

In September 2005, Mrs. Coffey hired a broker to locate a buyer for the boat. By late November 2005, the broker located a buyer, and on January 5, 2006, the broker prepared an initial seller's disbursement summary showing the balance of Wachovia's boat loan to Dr. Coffey. However, the final seller's disbursement summary did not reflect the debt owed to Wachovia. According to Mrs. Coffey, she had given the boat loan information to the broker, but the broker contacted Wachovia and learned that there was "no lien" on the boat and that the sale proceeds could be transferred to A & M Partners, Inc., the corporation in which she and Dr. Coffey held stock. Ultimately, Mrs. Coffey received the net proceeds of the sale, and she deposited them into one of her bank accounts.

Mrs. Coffey also stated that shortly after the closing of the boat sale in January 2006, she realized that Dr. Coffey had purchased the boat with loan proceeds from a home equity line of credit and that he had signed a mortgage purportedly securing the debt with their home. Mrs. Coffey indicated that she became angry at Wachovia's employees about the transaction taking place without her knowledge and refused to make any further payments on the loan.

Wachovia later filed this mortgage foreclosure action against Mrs. Coffey. In its initial complaint filed on June 30,

2006, Wachovia originally named as defendants Dr. Coffey's estate, Mrs. Coffey, both individually and as personal representative of Dr. Coffey's estate, and three of the couple's five children. Wachovia filed an amended complaint on May 9, 2008, to name as defendants only Mrs. Coffey and Bank of America, N.A. In the meantime, Mrs. Coffey had filed with the Beaufort County Probate Court an inventory and appraisement of Dr. Coffey's estate in September 2006. The inventory and appraisement acknowledged Dr. Coffey's and Mrs. Coffey's joint ownership of the boat. The inventory and appraisement also indicated that Dr. Coffey's probate estate had a negative value. Mrs. Coffey admitted that most of Dr. Coffey's assets had been transferred to her and other family members outside the probate estate through a marital trust.

In its amended complaint, Wachovia sought to foreclose on the mortgage signed by Dr. Coffey and asserted additional causes of action for ratification, prejudgment interest, unjust enrichment, equitable lien, and equitable mortgage. Wachovia filed a motion for summary judgment on the unjust enrichment, equitable lien, and prejudgment interest causes of action, and Mrs. Coffey filed a cross-motion for summary judgment on all of Wachovia's causes of action. The master granted Mrs. Coffey's summary judgment motion and denied Wachovia's summary judgment motion. This appeal followed.

## ISSUE ON APPEAL

Is Wachovia barred from seeking relief in the courts due to its unauthorized practice of law in the loan transaction with Dr. Coffey?

## STANDARD OF REVIEW

On appeal from the grant of a summary judgment motion, this Court applies the same standard as that required for the circuit court under Rule 56(c), SCRCP. *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000). " 'Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " *Adamson v. Richland County Sch. Dist. One*, 332 S.C. 121, 124, 503 S.E.2d 752,

753 (Ct.App.1998) (quoting *Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997)).

## LAW/ANALYSIS

Wachovia assigns error to the master's granting of summary judgment to Mrs. Coffey on the claim that she ratified the note and mortgage signed by Dr. Coffey. Wachovia argues that there was a genuine dispute about the inferences to be drawn from the evidence pertaining to this claim. Wachovia also assigns error to the master's grant of Mrs. Coffey's summary judgment motion and denial of its summary judgment motion on its causes of action for unjust enrichment, equitable lien, and prejudgment interest.

However, Mrs. Coffey asserts that the doctrine of unclean hands bars Wachovia from seeking equitable relief from our courts.[1] She argues that Wachovia committed the unauthorized practice of law, and, therefore, Wachovia came into court with unclean hands. We agree.[2]

---

1. One of Wachovia's grounds for challenging the master's reliance on the unclean hands doctrine is that Coffey was barred from raising this affirmative defense because she failed to raise it in her answer. The master did not address this procedural issue when he ruled that Wachovia had unclean hands, and Wachovia failed to file a motion to alter or amend pursuant to Rule 59(e), SCRCP. Therefore, the issue is not preserved for our review. *See Hancock v. Wal–Mart Stores, Inc.*, 355 S.C. 168, 171, 584 S.E.2d 398, 399 (Ct.App.2003) (holding that an argument raised to the trial judge but not addressed in the final order is not preserved for appellate review when the appellant fails to file a motion to alter or amend). Further, Wachovia did not include Coffey's answer in the Record on Appeal. Because we are unable to review the answer to determine whether the defense of unclean hands was adequately pled, we will not consider this procedural challenge to the master's order. *See* Rule 210(h), SCACR (the appellate court will not consider any fact which does not appear in the Record on Appeal); *Germain v. Nichol*, 278 S.C. 508, 509, 299 S.E.2d 335 (1983) ("Appellant has the burden of providing this Court with a sufficient record upon which this Court can make its decision.").

2. In no way do we purport to regulate the practice of law by addressing the unauthorized practice of law in this opinion. The regulation of the practice of law is within the exclusive province of our supreme court. *See* S.C. Const. art. V, § 4 ("The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted."); S.C.Code Ann. § 40–5–10 (2001) ("The inherent power of the Supreme Court with respect to regulating the practice of law,

■■■■ "The doctrine of unclean hands precludes a plaintiff from recovering in equity if he acted unfairly in a matter that is the subject of the litigation to the prejudice of the defendant." *First Union Nat'l Bank of S.C. v. Soden*, 333 S.C. 554, 568, 511 S.E.2d 372, 379 (Ct.App.1998). "The expression 'clean hands' means a clean record with respect to the transaction with the defendants themselves and not with respect to others." *Arnold v. City of Spartanburg*, 201 S.C. 523, 532, 23 S.E.2d 735, 738 (1943). The rule must be understood to refer to some misconduct concerning the matter in litigation of which the opposing party can, in good conscience, complain in a court of equity. *Id.*

■■■■ As early as 1987, lending institutions doing business in South Carolina were on notice that they could not prepare legal documents in connection with a mortgage loan without review by an independent attorney and that the loan closing had to be supervised by an attorney. *See State v. Buyers Serv. Co.*, 292 S.C. 426, 431–434, 357 S.E.2d 15, 18–19 (1987) (holding that a commercial title company's employment of attorneys to review mortgage loan closing documents did not save the company's preparation of those documents from constituting the unauthorized practice of law and that the closings should be conducted only under an attorney's supervision), modified by *Doe v. McMaster*, 355 S.C. 306, 585 S.E.2d 773 (2003); *see also Doe Law Firm v. Richardson*, 371 S.C. 14, 17, 636 S.E.2d 866, 868 (2006) (citing *Buyers* and *McMaster*) (clarifying that a lender may prepare legal documents for use in financing or refinancing a real property loan as long as an independent attorney reviews them and makes any corrections necessary to ensure their compliance with the law and reaffirming that mortgage loan closings should be conducted only under an attorney's supervision).[3]

---

determining the qualifications for admission to the bar and disciplining, suspending and disbarring attorneys at law is hereby recognized and declared."). Rather, we address Wachovia's unauthorized practice of law as it affects the merits of this action against Mrs. Coffey.

3. The attorney supervising the loan closing may represent both the lender and the borrower after full disclosure and with each party's consent. *Richardson*, 371 S.C. at 17, 636 S.E.2d at 868.

Here, on July 23, 2001, Wachovia's employees processed the home equity loan to Dr. Coffey without the supervision of an attorney. Their unauthorized practice of law resulted in prejudice to Mrs. Coffey when the mortgage signed by Dr. Coffey was recorded and when Wachovia filed this foreclosure action against Mrs. Coffey. While Mrs. Coffey could have applied the proceeds from the sale of the boat to the balance due on the boat loan, we cannot allow her failure to do so to obscure the misconduct of Wachovia's employees. The unauthorized practice of law is inherently prejudicial to not only the parties involved in the instant transaction but also to the public at large for the reason so cogently stated in *Buyers*:

> The reason preparation of instruments by lay persons must be held to constitute the unauthorized practice of law is not for the economic protection of the legal profession. Rather, it is for the protection of the public from the potentially severe economic and emotional consequences which may flow from erroneous advice given by persons untrained in the law.

*Buyers*, 292 S.C. at 431, 357 S.E.2d at 18. We therefore reach the inescapable conclusion that Wachovia has come to court with unclean hands and is barred from seeking equitable relief.

Wachovia's legal causes of action are barred as well. In *Linder v. Ins. Claims Consultants, Inc.*, 348 S.C. 477, 560 S.E.2d 612 (2002), our supreme court refused to allow a public insurance-adjusting business to be compensated for the value of its performance attributable to the unauthorized practice of law. *Linder*, 348 S.C. at 496, 560 S.E.2d at 622. This is consistent with South Carolina precedent asserting that no person be permitted to acquire a right of action from their own unlawful act and that one who participates in an unlawful act cannot recover damages for the consequence of that act. *See Jackson v. Bi–Lo Stores, Inc.*, 313 S.C. 272, 276–77, 437 S.E.2d 168, 170–71 (Ct.App.1993) (applying this policy to a contract secured and maintained by bribery). "This rule applies at both law and in equity and whether the cause of action is in contract or in tort." *Jackson*, 313 S.C. at 276, 437 S.E.2d at 170.

Based on the foregoing, Mrs. Coffey was entitled to judgment as a matter of law. Therefore, the master properly

granted her summary judgment motion. In no way do we condone the actions of either Dr. Coffey or Mrs. Coffey in relation to this loan. However, we are bound by precedent and must therefore deny Wachovia's request for relief. In view of our disposition of this issue, we need not address Wachovia's remaining arguments. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating that the appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## CONCLUSION

Accordingly, the order of the master-in-equity is
**AFFIRMED.**

PIEPER, J., and CURETON, A.J., concur.