# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

ArrowPointe Federal Credit Union, Respondent,

v.

Jimmy Eugene Bailey; Laura Jean Bailey; and U.S. Bank National Association not in its individual capacity but solely in its capacity as Indenture Trustee for WVUE 2015-1, Defendants,

Of which U.S. Bank National Association not in its individual capacity but solely in its capacity as Indenture Trustee for WVUE 2015-1 is the Appellant.

Appellate Case No. 2018-000230

―――――――――――

Appeal From Fairfield County
Carol Ann Tolen, Special Referee

―――――――――――

Opinion No. 5784
Heard October 15, 2020 – Filed November 25, 2020

―――――――――――

**AFFIRMED**

―――――――――――

Andrew Bryant Walker and Shaun C. Blake, both of Rogers Lewis Jackson Mann & Quinn, LLC, and Sean Matthew Foerster, of Rogers Townsend & Thomas, PC, all of Columbia, for Appellant.

Christy Curtis Jones, of Sherpy & Jones, PA, and Jonathan McKey Milling and Cydney McAdams Milling, both of Milling Law Firm, LLC, all of Columbia, for Respondent.

**THOMAS, J:**   ArrowPointe Federal Credit Union filed this action against Jimmy Eugene Bailey, Laura Jean Bailey, and JPMorgan Chase Bank, seeking foreclosure of a mortgage and a declaration that its mortgage be declared a first lien. Appellant[1] appeals the special referee's order granting ArrowPointe summary judgment and ordering foreclosure, arguing the referee erred in finding (1) South Carolina does not recognize the replacement mortgage doctrine, (2) ArrowPointe suffered material prejudice by the application of the replacement mortgage doctrine, and (3) the existence of material prejudice under the replacement mortgage doctrine defeats the priority of the replacement mortgage.   We affirm.

## FACTS

### A.     Stipulated Facts

The parties stipulated to the following facts:

The Baileys owned 247 Morninglow Drive in Winnsboro and mortgaged the property to Quicken, which secured a note in the principal amount of $256,500. The Quicken Mortgage was recorded on October 20, 2009[2] (First Mortgage) and was in a senior lien priority position on the subject property.   On October 27, 2009, the Baileys gave ArrowPointe a mortgage securing an equity line of credit (ArrowPointe LOC) in the principal amount of $99,000.   The ArrowPointe LOC was recorded on November 4, 2009.   At the time, "the parties to that transaction intended the [ArrowPointe LOC] to be a junior mortgage on the Subject Property second in lien priority position behind the First Mortgage."

On November 23, 2009, the Baileys entered a subsequent mortgage and loan transaction with Quicken (Second Mortgage), obtaining a new loan in the principal amount of $296,000, an increase from the First Mortgage of $39,500.   The proceeds of the Second Mortgage were used to pay off the loan secured by the First

---

[1] JPMorgan Chase Bank is one of numerous predecessors in interest to Appellant, U.S. Bank National Association not in its individual capacity but solely in its capacity as Indenture Trustee for WVUE 2015-1, including Quicken Loan, Inc. Regardless of the entity in interest at the time of a filing or hearing, we refer to it as Appellant.

[2] The Joint Stipulation states the First Mortgage was recorded on October 15, 2009. The mortgage reflects recording on October 20, 2009.

Mortgage in the amount of $257,459.04.[3] The First Mortgage was released of record, and the Second Mortgage was recorded on December 15, 2009. The Second Mortgage was assigned numerous times.

At the time of the Second Mortgage, Quicken did not have actual knowledge of the ArrowPointe Loan, but was on record notice of it. In addition, the Baileys executed an acknowledgment by affidavit that "there [were] no outstanding home improvement loans, mortgages, deeds of trust, or equity lines of credit, recorded or unrecorded."

The Baileys defaulted on the ArrowPointe LOC, and ArrowPointe filed this foreclosure action. At the time of the Joint Stipulation, the amount due on the ArrowPointe LOC was $187,201.60.

## B.     Other Facts

Appellant and ArrowPointe filed competing motions for summary judgment, each claiming lien priority. At a hearing on September 19, 2013, Appellant abandoned its equitable subrogation argument and argued the replacement mortgage doctrine entitled it to priority. By order dated March 19, 2015, the special referee denied Appellant's motion for summary judgment, concluding "the replacement mortgage theory is not the law of the State of South Carolina and should not apply in this case. Therefore, as a matter of law, [the Second Mortgage] does not take priority over [the ArrowPointe LOC]." Appellant moved for reconsideration, the referee heard arguments, and the motion for reconsideration was orally denied.

At a subsequent hearing, the referee heard arguments on ArrowPointe's motion for summary judgment. Appellant argued it was entitled to first priority under the replacement mortgage doctrine, and even if ArrowPointe was prejudiced, it was only prejudiced to the extent the Second Mortgage was greater than the First Mortgage. Appellant argued it "was $260,000 in already with these borrowers, and to the extent [it] raised it up into the 290s and the Court determines that's a material prejudice, . . . [it] should get up to 260."

By order dated January 18, 2018, the referee granted ArrowPointe's motion for summary judgment. The referee again found the doctrine of replacement mortgage was not part of the case or statutory law of South Carolina. The referee also found

---

[3] Although not in the Joint Stipulation, the Settlement Statement reflects funds of $26,235.11 were disbursed to the Baileys.

even if the doctrine was the law in South Carolina, ArrowPointe suffered material prejudice because the principal amount of the Second Mortgage was larger than the First Mortgage and "any material prejudice is fatal to Replacement Mortgage." The referee ordered foreclosure and sale of the subject property and awarded ArrowPointe first lien priority.  This appeal follows.

## STANDARD OF REVIEW

"When an appeal involves stipulated or undisputed facts, an appellate court is free to review whether the trial court properly applied the law to those facts."  *WDW Props. v. City of Sumter*, 342 S.C. 6, 10, 535 S.E.2d 631, 632 (2000).  "In such cases, the appellate court owes no particular deference to the trial court's legal conclusions."  *J.K. Constr., Inc. v. W. Carolina Reg'l Sewer Auth.*, 336 S.C. 162, 166, 519 S.E.2d 561, 563 (1999).

## LAW/ANALYSIS

### A.    Doctrine of Replacement Mortgage

Appellant argues the special referee erred in finding it was not entitled to lien priority under the replacement mortgage doctrine.  We disagree.

South Carolina is a "race-notice" state in which our recording statute determines the priority of liens by the date of recording.  *See* S.C. Code Ann. § 30–7–10 (2007) (codifying South Carolina's recording act); *Regions Bank v. Wingard Props., Inc.*, 394 S.C. 241, 255, 715 S.E.2d 348, 355 (Ct. App. 2011) ("The recording statute found in section 30–7–10 . . . provides that all mortgages are valid, without notice, from the day they are recorded in the register of deeds for the county where the real property is located."); *Leasing Enters., Inc. v. Livingston*, 294 S.C. 204, 208, 363 S.E.2d 410, 412 (Ct. App. 1987) ("Our reading of the current statute indicates the recording act is a race-notice act which will provide protection to the subsequent purchaser or creditor provided he records first.").

One exception to our race-notice statute is the doctrine of equitable subrogation. "Equitable subrogation allows a subsequent creditor to assume the rights and priority of a prior creditor."  *What's New*, 13 Aug. S.C. Law. 47, 53 (2001).  To be equitably subrogated to a prior mortgage, a party must meet the following elements:  (1) the party claiming subrogation has paid the debt; (2) the party was not a volunteer but "had a direct interest in the discharge" of the debt or lien; (3) the party was secondarily liable for the debt or for the discharge of the lien; (4) no

injustice will be done to the other party by the allowance of the equity; and (5) the party asserting the doctrine must not have had actual notice of the prior mortgage. *Indep. Nat'l Bank v. Buncombe Prof'l Park, LLC*, 411 S.C. 605, 608, 769 S.E.2d 663, 665 (2015).

Like the doctrine of equitable subrogation, the doctrine of replacement mortgage is an exception to the race-notice statute. The doctrine of replacement mortgage urged by Appellant to be adopted is described as follows:

> (a) If a senior mortgage is released of record and, as part of the same transaction, is replaced with a new mortgage, the latter mortgage retains the same priority as its predecessor, except
>
> (1) to the extent that any change in the terms of the mortgage or the obligation it secures is materially prejudicial to the holder of a junior interest in the real estate, or
>
> (2) to the extent that one who is protected by the recording act acquires an interest in the real estate at a time that the senior mortgage is not of record.

Restatement (Third) of Property (Mortgages) § 7.3 (1997 & June 2020 Update).

"In recent years, a significant number of courts have adopted the Restatement or followed its logic." Grant S. Nelson & Dale A. Whitman, *Adopting Restatement Mortgage Subrogation Principles: Saving Billions of Dollars for Refinancing Homeowners*, 2006 BYU L. Rev. 305, 314 (2006). The state appellate courts have varying approaches to equitable subrogation:

> Courts have adopted three different approaches to equitable subrogation, reflecting different apportionments of equity: (1) the majority position holds that a party with actual knowledge of an intervening lien cannot seek equitable subrogation; (2) the minority position holds that a party with actual or constructive knowledge of an intervening lien cannot seek equitable subrogation; and (3) the Third Restatement of Property approach states that actual or constructive knowledge of an intervening

lien is irrelevant and does not bar application of equitable subrogation.

Glenn R. McGillivray, *What's Your Priority?: Revitalizing Pennsylvania's Approach to Equitable Subrogation of Mortgages After First Commonwealth Bank v. Heller*, 58 Vill. L. Rev. 301, 310 (2013).

Appellant argues the common law in South Carolina supports the replacement mortgage doctrine. South Carolina has held that a party may assert the doctrine of equitable subrogation if the party did not have actual notice of an intervening mortgage even if the party had constructive notice. *Enter. Bank v. Fed. Land Bank of Columbia*, 139 S.C. 397, 401, 138 S.E. 146, 148 (1927). In *Enterprise Bank*, the Supreme Court allowed equitable subrogation where "[a] most elaborate and painstaking abstract was made of the title by . . . a reputable attorney of the Oconee bar" and the party seeking equitable subrogation met the elements thereof. *Id.* at 400, 138 S.E. at 147. The court noted the intervening mortgagee's "position was not in any wise altered to its prejudice by anything that the [party seeking equitable subrogation] did; its claim to priority rest[ed] solely upon . . . fortuitous circumstances . . . ." *Id.* at 401, 138 S.E. at 148.

More recently, in *Dedes v. Strickland*, 307 S.C. 155, 159, 414 S.E.2d 134, 136 (1992), the Supreme Court refused to invoke the doctrine of equitable subrogation for the benefit of a lender who paid and satisfied its own mortgage but did not discover an intervening mortgage. The court noted the importance of a proper search of the records by stating "we would not construe as a mistake the failure of First Federal, a commercial lender, to search the appropriate records and ascertain the existence of other liens." *Id.* at 159, 414 S.E.2d at 137; *see Bank of New York v. Nally*, 820 N.E.2d 644, 652 (Ind. 2005) (citing *Enterprise Bank* and South Carolina as in "[t]he majority of jurisdictions [that] continue to state that actual knowledge precludes the application of equitable subrogation, while constructive knowledge does not." (quoting *Osterman v. Baber*, 714 N.E.2d 735, 739 (Ind. Ct. App. 1999))).

Finally, in *Matrix Financial Services Corp. v. Frazer*, the court held Matrix was not entitled to priority lien status under the doctrine of equitable subrogation. 394 S.C. 134, 138, 714 S.E.2d 532, 534 (2011). Citing *Dedes*, 307 S.C. at 158-59, 414 S.E.2d at 138, the *Matrix* court stated that a lender "could not be subrogated to the rights of its own prior mortgage." *Id.* at 137-38, 714 S.E.2d at 534.

Although South Carolina has not adopted the Restatement doctrine of replacement mortgage, Appellant argues our supreme court indicated support of the doctrine in *Matrix*. In *Matrix*, a default judgment against the mortgagors was enrolled after their first mortgage was recorded and assigned to Matrix. *Id.* at 136, 714 S.E.2d at 533. The mortgagors refinanced and a replacement mortgage was then recorded. *Id.* The court held Matrix was not entitled to priority lien status under the doctrine of equitable subrogation and could not be subrogated to the rights of its own prior mortgage. *Id.* at 138, 714 S.E.2d at 534. However, the court also noted the following:

> Matrix is not asserting priority under a theory of replacement and modification. Matrix expressly pled equitable subrogation in its reply to Appellant's counterclaim. Both *Dedes*, controlling South Carolina precedent, and section 7.6 of the Restatement [(Third) of Property (Mortgages)] stand for the proposition that a lender that refinances its own debt is not entitled to equitable subrogation. We do not decide whether a lender that refinances its own debt could attain priority under the theory of replacement and modification illustrated in section 7.3 of the Restatement . . . .

*Id.*[4]

Appellant argues the dicta in *Matrix* regarding the theory of replacement and modification indicates the court would have allowed Matrix priority under section 7.3 of the Restatement. Appellant also relies on the dissent in *Matrix*. *See id.* at 141, 714 S.E.2d at 535-36 (Pleicones, J., dissenting) ("It appears that the majority would agree with me that a refinancer has a right to lien priority, if that refinancer uses the theory of 'replacement and modification' rather than equitable subrogation.").

Appellant next cites an order from the Honorable Marvin H. Dukes, III, Master-in-Equity and Special Circuit Court Judge for Beaufort County. Appellant argues Judge Dukes "considered similar facts and legal arguments . . . and found [the doctrine of]. . . Replacement Mortgage should be applied to establish the priority

---

[4] The *Matrix* court also noted "even if Matrix met the requirements for equitable subrogation, Matrix would be precluded from receiving that remedy because of its unauthorized practice of law." *Id.*

of the replacement mortgage at issue." ArrowPointe maintains there is no precedential value to Judge Duke's order, and the facts in that case are distinguishable because the replacement loan was for a smaller amount than the replaced mortgage. In addition, the intervening creditor in that case was a judgment creditor rather than a mortgage creditor that made a decision to approve a loan based on business ratios and a title search. Appellant provides no citation to authority to support this argument and acknowledges Judge Dukes' order is not "controlling authority." *See Plante v. State*, 315 S.C. 562, 563, 446 S.E.2d 437, 438 (1994) (stating the defendant improperly relied on an unpublished order).

Appellant also relies on the adoption of replacement mortgage in sister states, citing the rationale espoused in *Sovereign Bank v. Gillis*, in which the New Jersey Superior Court adopted the Restatement view stating:

> We regard this as a sound approach. A proper judicial
> analysis of material prejudice will examine such aspects
> as the respective loan amounts involved, the interest
> rates, and, potentially the loan terms. Actual or
> constructive knowledge by the refinancing lender, if it is
> the same original lender or its corporate successor,
> should be irrelevant.

74 A.3d 1, 9–10 (N.J. Super Ct. App. Div. 2013) (footnote omitted).

ArrowPointe argues if "replacement and modification" is adopted, it "should only be used with regard to true loan modifications, which by definition do not satisfy or cancel the original mortgage or cash-out funds to borrowers." ArrowPointe also distinguishes *Sovereign Bank*, arguing New Jersey has statutory provisions specifically addressing the priority of mortgages after a modification. ArrowPointe urges this court to recognize our "legislature has not seen fit to [statutorily address the priority of mortgages after a modification] . . . and instead seems to be comfortable with the uncomplicated race-notice statute . . . ."

We are cognizant of the trend toward adopting some form of replacement mortgage doctrine in sister states and our supreme court's dicta in *Matrix*. However, we are also mindful that replacement mortgage is an equitable doctrine and the minority approach. "[A] black-letter-law approach of mechanically applying a Restatement test avoids the fact-specific inquiry characteristic of equitable subrogation historically . . . ." Gregg H. Mosson, Comment, *Equitable Subrogation in Maryland Mortgages and the Restatement of Property: A*

*Historical Analysis for Contemporary Solutions*, 41 U. Balt. L. Rev. 709, 736 (2012). "[S]ubstituting a black-letter test for a balancing of equities reduces a court's equitable inquiry, more likely excuses egregious conduct, and restricts others' equitable defenses against a party seeking subrogation [and] . . . replaces a court's abiding equitable powers for temporary fixes to evolving commercial problems." *Id.* (footnotes omitted). The adoption of the Restatement allows "subrogation to be an odd, judicial loophole . . . because without equity it loses its rationale [by excusing] . . . non-compliance with statutory law, . . . [promoting] a band-aid approach to subrogation to keep the mortgage market moving, and expand[ing] excusable negligence for a plaintiff seeking subrogation." *Id.* at 736-37 (footnotes omitted).

Because Appellant had constructive notice and under our race-notice statute ArrowPointe has priority, we agree with ArrowPointe that this matter is for our legislature. *See e.g.*, N.J. Stat. Ann. § 46:9−8.2 (1991) (statutorily providing for lien priority where a mortgage loan has undergone a modification to the extent "of the maximum specified principal amount which is secured by the mortgage"). Accordingly, we affirm the special referee's order declining to adopt the replacement mortgage doctrine.

## B.      Prejudice[5]

Appellant maintains the special referee erred in ruling ArrowPointe suffered material prejudice such as to avoid the replacement mortgage doctrine because ArrowPointe was on record notice that the amount secured by First Mortgage could increase. Because we decline to adopt the replacement mortgage doctrine, we need not address the remaining issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting an appellate court need not address remaining issues on appeal when the disposition of a prior issue is dispositive).

## CONCLUSION

Based on the foregoing, the special referee's order declining to adopt the replacement mortgage doctrine is

## AFFIRMED.

---

[5] We combine Appellant's second and third arguments.

**HILL and HEWITT, JJ., concur.**